[No. B171608. Second Dist., Div. Four. Sept. 29, 2004.]

SYLMAR AIR CONDITIONING, Plaintiff and Appellant, v.
PUEBLO CONTRACTING SERVICES, INC., Defendant and Respondent.

Counsel

Brett L. Francisco for Plaintiff and Appellant.

Lisa A. Stepanski for Defendant and Respondent.

Opinion

**HASTINGS, J.**—Appellant Sylmar Air Conditioning (Sylmar) appeals from an order awarding attorney fees and costs against it after the trial court granted a special motion to strike pursuant to Code of Civil Procedure section 425.16, a so-called SLAPP motion.[1] The SLAPP motion addressed the third cause of action in a cross-complaint filed by Sylmar against respondent Pueblo Contracting Services (Pueblo). Prior to the hearing on the SLAPP motion, pursuant to authority granted by section 472, Sylmar filed a first amended cross-complaint. It contends that by filing the first amended cross-complaint, the SLAPP motion was rendered moot and the trial court erred in addressing the merits of the motion and awarding attorney fees and costs. It also contends that its pleading was not a pleading falling within the scope of the anti-SLAPP statute. We conclude the trial court did not err.

It is the public policy of the state that complaints arising from the exercise of free speech rights be evaluated at an early stage. This cannot be defeated by filing an amendment even as a matter of right pursuant to section 472. With regard to the merits of the motion, the third cause of action asserted fraud based upon communications between attorneys for Pueblo and Sylmar and between employees of Pueblo and Sylmar concerning pending litigation involving work performed by Sylmar pursuant to a subcontract issued by Pueblo. As such, the communications qualified for treatment under the litigation privilege of Civil Code section 47, subdivision (b). Sylmar failed to present evidence to demonstrate a probability of overcoming application of the privilege.

## BACKGROUND

On August 20, 2002, the Watts/Willowbrook Boys and Girls Club (Watts/Willowbrook) filed an action against Pueblo and others, alleging

---

[1] The statute targets actions known as "strategic lawsuits against public participation," which is the derivation of the acronym "SLAPP." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 [124 Cal.Rptr.2d 530, 52 P.3d 703].) Code of Civil Procedure section 425.16 has therefore become known as the anti-SLAPP statute, and motions made pursuant to the statute as "SLAPP motions." All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

breach of contract and negligence in connection with the renovation and expansion of the plaintiff's facilities. Pueblo cross-complained against Watts/Willowbrook and various subcontractors, including Sylmar, seeking from the subcontractors indemnity and contribution, alleging breach of contract and negligence. Sylmar, in turn, filed a cross-complaint against Pueblo, alleging breach of contract, fraud, and breach of the covenant of good faith and fair dealing. It is this latter cross-complaint which was the subject of the special motion to strike which was granted, giving rise to this appeal.

The SLAPP motion was addressed to the third cause of action of Sylmar's cross-complaint, a Judicial Council form pleading, which identifies the third cause of action as one for "fraud" and contains allegations of intentional misrepresentation, negligent misrepresentation and concealment. The gist of the claim for fraud which was addressed by the parties in connection with the SLAPP motion is contained in the following allegations:

"PUEBLO'S attorney, Christopher Morrow, stated that the [ow]ner had chargebacked PUEBLO for defective or incomplete work of SYLMAR. Mr. Morrow and Dorene Schiavone, manager for PUEBLO, also stated that the owner had withheld funds for the defective or incomplete work of SYLMAR.

"The owner had not backcharged PUEBLO for defective or incomplete work of SYLMAR and had not withheld funds for the defective work or incomplete work of SYLMAR.

"When defendant made the representations, defendant knew they were false."

Pueblo filed its SLAPP motion to strike the third cause of action at the same time it filed demurrers to Sylmar's cross-complaint, including the third cause of action. The matters were scheduled for hearing on the same day.

Three days before the SLAPP motion and demurrers were to be heard, Sylmar filed a first amended complaint. The third cause of action still alleged fraud, but it was pleaded in greater detail.

On September 10, 2003, the trial court granted the SLAPP motion and issued a written decision setting forth its reasoning. The court struck the third cause of action and awarded attorney fees and costs to Pueblo. It also found the demurrers moot.

On October 1, 2003, Pueblo filed a new SLAPP motion, directed at the third cause of action of the first amended complaint. At a status conference on

November 5, 2003, Sylmar voluntarily withdrew the third cause of action in the amended complaint and the new SLAPP motion was taken off calendar. Sylmar then filed a timely notice of appeal from the order granting the first SLAPP motion.

## DISCUSSION

1. *Sylmar's Right to Amend*

As pertinent, section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Subdivision (c) of the same section provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."

Sylmar contends that the trial court erred in hearing the SLAPP motion because it filed a first amended complaint pursuant to section 472 prior to the hearing on the motion. Sylmar draws its reasoning from the language of that section, which provides: "Any pleading may be amended once by the party *of course, and without costs*, at any time before the answer or demurrer is filed, or after demurrer and before the trial of the issue of law thereon." (Italics added.) Referencing the italicized language, Sylmar contends that an award of attorney fees and costs to a successful moving party under section 425.16 is in direct conflict with section 472: that an amendment of right is to be allowed without costs.

We discern no conflict between the two sections. Sylmar received the benefit of section 472 when it was permitted to file the first amended complaint. The filing of the first amended complaint rendered Pueblo's demurrer moot since " 'an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading. [Citations.]' [Citation.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884 [92 Cal.Rptr. 162, 479 P.2d 362].) The trial court agreed that the demurrer was moot and took it off calendar. And no costs were assessed against Sylmar in connection with the filing of the first amended complaint. The attorney fees and costs were awarded based upon filing of the original complaint.

■ It is settled that a plaintiff may not avoid liability for attorney fees and costs by voluntarily *dismissing* a cause of action to which a SLAPP motion is directed. (*Pfeiffer Venice Properties v. Bernard* (2002) 101

Cal.App.4th 211, 218–219 [123 Cal.Rptr.2d 647]; *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 918 [84 Cal.Rptr.2d 303]; *Liu v. Moore* (1999) 69 Cal.App.4th 745, 752–753 [81 Cal.Rptr.2d 807]; *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94, 106–107 [77 Cal.Rptr.2d 600].) Nor is the issue of attorney fees and costs rendered moot even by an involuntary dismissal after a demurrer is sustained without leave to amend. (*White v. Lieberman* (2002) 103 Cal.App.4th 210, 220–221 [126 Cal.Rptr.2d 608].) Sylmar contends that an amendment of the complaint is qualitatively different than dismissal of the complaint and therefore it should not be treated similarly. We disagree.

*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073–1074 [112 Cal.Rptr.2d 397] (*Simmons*), establishes there is no express or implied right in section 425.16 to amend a pleading to avoid a SLAPP motion. Sylmar contends that *Simmons*, which deals with an amendment for which leave of court was required, is distinguishable from this case where it filed its amendment as a matter of right, pursuant to section 472. Given the public policy behind section 425.16, we perceive no distinction in substance.

*Simmons* addresses the potential mischief a plaintiff could cause by using an amendment to defeat the legislative purpose of section 425.16:

"In enacting the anti-SLAPP statute, the Legislature set up a mechanism through which complaints that arise from the exercise of free speech rights 'can be evaluated at an early stage of the litigation process' and resolved expeditiously. [Citation.] Section 425.16 is just one of several California statutes that provide 'a procedure for exposing and dismissing certain causes of action lacking merit.' [Citation.]

"Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. *Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend.*

"By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent. [Citation.] Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources.

[Citation.] This would totally frustrate the Legislature's objective of providing a quick and inexpensive method for unmasking and dismissing such suits. [Citation.]" (*Simmons, supra,* 92 Cal.App.4th at pp. 1073–1074, italics added.)

Sylmar's argument would require a strict and technical reading of section 425.16 to insert section 472 as an implied condition to its application. We cannot perceive the Legislature intended such a result. Thus, we conclude the determination of Pueblo's claim for attorney fees and costs was not moot and the trial court did not err in addressing the merits of the SLAPP motion. (See *Pfeiffer Venice Properties v. Bernard, supra,* 101 Cal. App.4th at p. 218 [123 Cal.Rptr.2d 647]; *Liu v. Moore, supra,* 69 Cal.App.4th at p. 752.)

2. *The Merits of the Ruling*

Sylmar contends that Pueblo failed to demonstrate that the alleged fraudulent statements were shown to have been made in a judicial proceeding or in connection with one to fall within section 425.16. In that regard, we note we are dealing here with the original complaint, which alleged fraudulent statements attributed to Pueblo's attorney Morrow as well as Pueblo's employee Diane Schiavone, that the owner had withheld funds for faulty or incomplete work by Sylmar.

As used in section 425.16, an " 'act in furtherance of a person's right of petition or free speech . . .' includes . . . any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e).)

On appeal from an order granting or denying a motion pursuant to section 425.16, the appellate court engages in a two-step process, determining, first, whether the defendant made a threshold showing that the challenged cause of action is one arising out of acts done in furtherance of the defendant's exercise of a right to petition or free speech under the United States or California Constitution in connection with a public issue, as defined in the statute; and second, whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685]; § 425.16, subd. (b)(1), (2).)

We independently determine whether a cause of action is based upon activity protected under the statute, and if so, whether the plaintiff has established a reasonable probability of prevailing. (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].) In doing so, we consider "the pleadings, and supporting

and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); *Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 67.)

The third cause of action alleged fraud perpetrated by attorney Morrow and Diane Schiavone. It was alleged that Morrow told Sylmar that the owner had backcharged Pueblo for defective and incomplete work of Sylmar; that Schiavone told Sylmar that the owner had withheld funds for the defective or incomplete work of Sylmar; and that these statements were untrue.

Pueblo submitted the declarations of Morrow and Schiavone in support of the motion. Morrow states that his law firm began communicating with the plaintiff, Watts/Willowbrook Boys & Girls Club, in early July 2002, before the action was commenced on August 20, 2002, and that "[t]hese communications were prepared with the intent to resolve this matter prior to litigation, with the understanding that Pueblo would promptly commence litigation if informal settlement was not attained." He then states:

"In or about November or December 2002, I first communicated with counsel for Sylmar regarding this litigation and in particular, Pueblo's deposition subpoena of Sylmar's custodian of records. All of my communications with Sylmar and its attorney of record, Mr. Francisco, were conducted either during the course of the underlying litigation or in anticipation of Pueblo's cross-complaint against Sylmar for the Watts/Willowbrook project. *Indeed the communications and alleged misrepresentations that Sylmar attributes to me in section FR-2 of its cross-complaint were made during this litigation and all of those communications related to matters concerning this litigation.*" (Italics added.)

Schiavone's declaration identifies her as the operations manager for Pueblo. Her duties included overseeing the Watts/Willowbrook project. She states that as early as July 2002, attorneys for Pueblo were corresponding with Watts/Willowbrook concerning the failure of Watts/Willowbrook to pay for the contracting work. In July 2002, Watts/Willowbrook issued "three separate revised punch lists. Th[ese] punch lists included allegedly defective and incomplete items stemming from work performed by various subcontractors on the project, including Sylmar." She further declares that in July 2002, she met with representatives from Sylmar, and others, to discuss the withholding of funds by Watts/Willowbrook at which time she "informed Sylmar that Watts/Willowbrook was withholding nearly $1,500,000 from Pueblo, which Watts/Willowbrook contended was a result of defective and/or incomplete work performed by Pueblo and its subcontractors, including Sylmar." She concluded by declaring that all of her communications between July 2002 through July 2003 with Sylmar's representatives dealt with the Watts/Willowbrook claims made in July 2002, and the resulting litigation.

Sylmar argues the declarants failed to demonstrate the so-called fraudulent communications were made "in connection with an issue under consideration or review by a judicial body." It also argues that if the statements are sought to be protected as prelitigation statements, the evidence fails to demonstrate the statements were "made in connection with proposed litigation that was contemplated in good faith and under serious consideration." We disagree.

██ In general, communications in connection with matters related to a lawsuit are privileged under Civil Code section 47, subdivision (b). (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1191 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; *Knoell v. Petrovich* (1999) 76 Cal.App.4th 164, 167 [90 Cal.Rptr.2d 162]; *Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 263 [68 Cal.Rptr.2d 305].) Communications " 'within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . are equally entitled to the benefits of section 425.16.' [Citations.]" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

██ Under the "usual formulation," the litigation "privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].) This includes prelitigation communications involving the subject matter of the ultimate litigation. (*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1115; *Financial Corp. of America v. Wilburn* (1987) 189 Cal.App.3d 764, 777 [234 Cal.Rptr. 653].)

██ It is not the defendant's burden in bringing a SLAPP motion to establish that the challenged cause of action is constitutionally protected as a matter of law. (*Navellier v. Sletten, supra,* 29 Cal.4th at pp. 94–95; *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906].) Once the defendant shows that the cause of action arose from acts done in furtherance an exercise of free speech, it becomes the plaintiff's burden to establish that the acts are *not* protected by the First Amendment. (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 94.)

In its opposition, Sylmar admitted that the statements made by Schiavone and Morrow, upon which Sylmar relied in support of the fraud count, occurred in March of 2003—after the underlying litigation had been filed. The subject of the underlying litigation was incomplete or defective work.

The declaration of Scott Wright, a partner in Sylmar, declared: "Ms. Schiavone made the representation to me for the purpose of getting SYLMAR to visit the project site and to complete work PUEBLO claimed was incomplete or defective." He also states: "Ms. Schiavone did not mention the possibility of litigation between PUEBLO and SYLMAR near the time she made the false representation. In fact, she said that PUEBLO was trying hard not to bring SYLMAR into its litigation with Watts/Willowbrook."

Wright's declaration conclusively establishes the communications from Ms. Schiavone occurred in connection with the Watts/Willowbrook litigation. The Watts/Willowbrook complaint, filed August 20, 2002, alleges construction deficiencies in, among other things, the HVAC system provided by Sylmar.[2] The fact that cross-complaints had not yet been filed by Pueblo and Sylmar is irrelevant. They ultimately were filed and related to Sylmar's work on the HVAC system in the Watts/Willowbrook project. Thus, the communications qualified for treatment under the privilege. (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 212; *Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1115; and *Financial Corp. of America v. Wilburn, supra,* 189 Cal.App.3d at p. 777.)

■ Sylmar failed to provide any evidence which, if believed by the trier of fact, would have defeated the privilege. We conclude that the SLAPP motion was meritorious, and that Pueblo was therefore entitled to an award of attorney fees and costs. (§ 425.16, subd. (c).) In addition, Pueblo is entitled to its attorney fees and costs on appeal. (See *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830].)

## DISPOSITION

The order awarding attorney fees and costs to Pueblo is affirmed. Pueblo shall recover its costs and attorney fees on appeal.

Epstein, Acting P. J., and Grimes, J.,* concurred.

---

[2] HVAC is an acronym for heating, ventilating and air conditioning. (See, e.g., *Architects & Contractors Estimating Service, Inc. v. Smith* (1985) 164 Cal.App.3d 1001, 1004 [211 Cal.Rptr. 45].)

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.