[No. E051217. Fourth Dist., Div. Two. Aug. 18, 2011.]

DEAN MARTIN, Plaintiff and Respondent, v.
INLAND EMPIRE UTILITIES AGENCY et al., Defendants and Appellants.

## COUNSEL

Liebert Cassidy Whitmore, Brian P. Walter and Jeffery E. Stockley for Defendants and Appellants.

The Mathews Law Group, Charles T. Mathews and Benjamin Zeng for Plaintiff and Respondent.

## OPINION

**MILLER, J.**—Plaintiff Dean Martin filed a complaint alleging six causes of action deriving from purported racial and age discrimination and retaliation by defendants Inland Empire Utilities Agency (agency) and its CEO (chief

executive officer),[1] Richard Atwater (collectively, defendants), for plaintiff's refusal to take punitive action against another employee who had made similar allegations. Plaintiff's fifth cause of action for defamation alleged defendants had "fabricated false allegations and uttered comm[unic]ations for the specific purpose of injuring Plaintiff in his career and occupation and designed to humiliate and embarrass Plaintiff . . . before the Board and before his own staff." Some of the alleged defamatory statements were purported to have occurred during a meeting of the agency's board on October 7, 2009. Defendants demurred and also filed a special motion to strike the complaint (anti-SLAPP motion)[2] pursuant to Code of Civil Procedure, section 425.16.[3] Plaintiff opposed both the anti-SLAPP motion and the demurrer. Defendants filed replies with evidentiary objections to plaintiff's declaration in support of his opposition to the anti-SLAPP motion.

The court overruled defendants' demurrer as to the first and third causes of action, sustained it without leave to amend as to the second cause of action, and sustained the demurrer with leave to amend as to plaintiff's remaining causes of action including defamation. The court then denied the anti-SLAPP motion without ruling on any of defendants' evidentiary objections. Defense counsel brought the lack of any rulings on the evidentiary objections to the court's attention. Defense counsel also argued that the court's determination that plaintiff's failure to adequately plead the defamation cause of action compelled an order granting the anti-SLAPP motion at least as to that particular cause of action. The court agreed and issued an order granting the anti-SLAPP motion with leave to amend.[4] The court issued a separate order a week later, ruling on defendants' evidentiary objections.

Defendants appeal contending the court erred in (1) granting the anti-SLAPP motion as to only the fifth cause of action; (2) granting the anti-SLAPP motion with leave to amend; (3) neglecting to rule on their evidentiary objections prior to ruling on the anti-SLAPP motion; (4) overruling 18 of defendants' 33

---

[1] The complaint and declaration in support of plaintiff's opposition to defendants' anti-SLAPP motion, as well as defendants' anti-SLAPP motion itself, indicate Atwater was the agency's CEO; however, Atwater's declaration in support of the anti-SLAPP motion indicates that he was the agency's chief operations officer.

[2] SLAPP is the acronym for a "strategic lawsuit against public participation." (*McConnell v. Innovative Artists Talent and Literary Agency, Inc.* (2009) 175 Cal.App.4th 169, 175 [96 Cal.Rptr.3d 1].)

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[4] Defense counsel attempted to clarify that the order granting the anti-SLAPP motion was limited to the fifth cause of action for defamation, but received no response from the court. Plaintiff's counsel urged the court to deny the anti-SLAPP motion, permit plaintiff to amend the complaint, and then allow defendants to file another anti-SLAPP motion after the amendment. Plaintiff later objected to the notice of ruling on the anti-SLAPP motion, which indicated that it had been granted as to all causes of action. Plaintiff received no response.

evidentiary objections; and (5) failing to award them attorney fees as the prevailing party. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

On January 27, 2010, plaintiff filed a complaint against defendants alleging causes of action for retaliation in violation of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) (first cause of action), retaliation in violation of public policy (second cause of action), racial discrimination in violation of FEHA (third cause of action), racial harassment in violation of FEHA (fourth cause of action), defamation (fifth cause of action), and wrongful constructive termination in violation of public policy (sixth cause of action). Plaintiff, a self-described individual of "African-American Heritage," alleged that on approximately September 8, 2004, he was hired by the agency, the municipal water district for the City of Chino, as its executive manager of finance and administration reporting directly to Atwater. Plaintiff alleged that his predecessor, a Caucasian, held the title of chief financial officer (CFO), a more prestigious title, reporting directly to the agency's board despite the fact that their duties and responsibilities were substantially similar.

Plaintiff alleged he was repeatedly assured he would be treated fairly. He was "praised for his work," and received "satisfactory annual performance appraisals, salary increases, and bonuses every year. Plaintiff worked hard and devoted long hours to his duties."

In early 2008, plaintiff discovered that a female African-American employee of the agency, Torres Levia, had filed a racial discrimination complaint against Atwater's Caucasian executive assistant, Julie Saba. Levia worked for the agency's human resources department headed by Amy Thenor. Plaintiff was Thenor's immediate superior. Plaintiff alleged that the agency's history with minorities was "deplorable." Atwater became "furious" that Saba had been so accused. Atwater began to complain to plaintiff about Levia's job performance, stating that she " 'had issues that needed to be dealt with' and clearly suggest[ed] that he wanted punitive steps to be taken against Levia." Plaintiff had been informed by Thenor that Levia's job performance was satisfactory. Plaintiff knew that taking punitive steps against Levia would violate the law and the agency's policy against retaliation against an employee who had lodged a discrimination complaint. Plaintiff refused to take any retaliatory action and advised Atwater against doing so.

Nonetheless, Atwater then demanded that Thenor take retaliatory measures against Levia. Thenor refused; she advised Atwater that to do so would violate the law and the agency's policies. Thenor later came to plaintiff

complaining that Atwater had been threatening her and harassing her to take punitive action against Levia. Thenor conveyed her intention to resign due to the harassment. Plaintiff advised Thenor that he would speak to Atwater. He did so. Atwater informed plaintiff that he would say nothing more on the issue to Thenor. Nevertheless, the next day Thenor came to plaintiff crying; she informed him that Atwater had called her at home the previous evening and berated her for not taking measures against Levia. Thenor resigned thereafter.

Plaintiff alleged that from that point, his relationship with Atwater deteriorated. Atwater began to retaliate against plaintiff "by eroding Plaintiff's responsibilities, undercutting his authority with his own staff, undermining his credibility with the Board and taking actions designed to embarrass and humiliate Plaintiff in an effort to force Plaintiff to resign or to create a pretextual justification to terminate Plaintiff's employment." Specifically, plaintiff alleged that Atwater appointed Thenor's successor without consulting with him, restructured his division while he was away on leave, announced the restructuring by written memorandum distributed manually instead of the usual method of e-mailing such changes, and promoted another one of plaintiff's subordinates without consultation with plaintiff.

Nevertheless, on February 4, 2009, the board awarded plaintiff the title of CFO and directed that he, from thence, report directly to the board. Plaintiff alleged Atwater later threatened to resign unless the board reversed its decision. Atwater subsequently gave plaintiff a more critical annual review than he had ever before received. When plaintiff complained about the review, Atwater told him it was time for him "to make some decisions." Plaintiff interpreted this as Atwater's way of inviting him to resign. On October 7, 2009, the board "yielded" to Atwater's demand and directed that plaintiff begin reporting directly to Atwater again. On approximately October 12, 2009, plaintiff filed a written complaint of discrimination, retaliation and harassment against defendants with California's Department of Fair Employment and Housing, which eventually gave him notice entitling him to proceed with his current FEHA action.

On April 16, 2010, defendants filed their anti-SLAPP motion. Defendants asserted that all plaintiff's causes of action were barred as privileged communications made in the proper discharge of their official duties pursuant to Civil Code section 47. Defendants further averred they enjoyed sovereign immunity pursuant to Government Code sections 818.4, 820.2, 820.9, and 822.2. Defendants repeatedly maintained that all plaintiff's causes of action were derived from statements made by Atwater and the agency at the board meeting on October 7, 2009: "Plaintiff['s] Complaint is essentially based upon alleged statements made by [Atwater], the CEO/General Manager of

[the agency] and/or others during a Board meeting for the Agency on October 7, 2009"; "While Plaintiff's Complaint asserts various other unspecified harassment and retaliation by Atwater, the gravamen of his claim is the alleged 'false accusations' made to the Board which resulted in Plaintiff being 'forced into a direct reporting relationship' with Atwater"; "Based on Atwater's statements to the Board at that October 7, 2009, meeting, Plaintiff asserts [his] causes of action against the Agency . . . ."; "Essentially, Plaintiff's Complaint seeks to punish Atwater and/or the Agency for the statements made at the October 7, 2009, Board meeting which led to the Board making the decision to 'demote' him by ordering him to report directly to Atwater. Regardless of whether Plaintiff captions his claims as wrongful termination, harassment, or retaliation, the gravamen of his Complaint is the alleged defamatory statements made by Atwater and/or the Agency at the October 7, 2009, Board meeting . . . ." Defendants noted that "Plaintiff's Complaint fails to specifically describe these alleged statements. However, this deficiency is irrelevant for purposes of determining whether SLAPP applies because the allegations are subject to SLAPP on their face." Defendants further argued that any statements made outside the board meeting would likewise be subject to the anti-SLAPP motion because they were made in connection with an issue under consideration by a governmental entity, i.e., plaintiff's performance as an employee.

Defendants simultaneously filed Atwater's declaration in support of their motion. Atwater declared that approximately October 7, 2009, the board met in both open and closed sessions. In its closed session, Atwater believed the board discussed plaintiff's performance as CFO. The board determined to have plaintiff report directly to Atwater again. Atwater declared that he did not take part in the decision and was not present when it was discussed. The board did not demote plaintiff; his title, salary, and benefits remained the same. Atwater never intentionally undermined plaintiff's authority, harassed him, or took any actions based on plaintiff's race or in retaliation for any complaints he or others made to the agency. Atwater's actions or statements were directed solely to legitimate business concerns about the operations of the agency. Plaintiff resigned on January 4, 2010; his resignation letter read: "It is not possible for me to continue to work here under the existing conditions that . . . allow for retaliation, harassment, and discrimination. . . . I have been forced to take this action as a direct result of . . . Atwater's past and continuing retaliation, harassment, and discrimination due to my refusal to break the law . . . ."

In plaintiff's opposition to defendants' anti-SLAPP motion, he noted, "Defendants are attempting to mislead this Court into thinking the heart [and] soul of the instant lawsuit is defamation. Though, a part of the instant lawsuit, the essence of this case is not that of defamation. The actual heart and soul of this case stems from retaliation . . . and FEHA claims." "Defendant's

retaliation and discrimination [against] Plaintiff is the focus of this lawsuit—not his 'political rights.' " Plaintiff "brings the instant lawsuit for the discriminatory acts committed against him and the retaliation he suffered for not breaking the law and for defamatory remarks made by Defendants during a lengthy time period—not because of an October 7, 2009, meeting." Plaintiff simultaneously submitted his own declaration, which, as the court below found, "essentially mirrors the allegations of his complaint." Defendants filed 33 objections to the contents of plaintiff's declaration.

On May 11, 2010, the court heard defendants' anti-SLAPP motion. The court noted, "[t]his is an action for retaliation and wrongful termination filed by plaintiff . . . against his former employer . . . and . . . Supervisor . . . ." The court observed "Agency and Atwater have attempted to characterize the entire complaint as being only for defamation based upon remarks Atwater made to the Agency's Board. Although the complaint does contain a cause of action for defamation, the gist of this action is clearly not only defamation. There are pleading deficiencies in the complaint, but each and every cause of action does not fall within a defamation claim."

After ruling on defendants' demurrer, the court stated, "As to the special motion to strike, it's denied . . . ." Defense counsel noted that he had not heard any ruling on defendants' evidentiary objections. Defense counsel further noted, "I was kind of confused, or maybe I didn't hear it right. When you were reading the order with respect to the special motion to strike, it sounded like you said he hadn't adequately pled the defamation claim. And based on that, I would assert that the special motion to strike should be granted given that he was given the opportunity to come forward with admissible evidence and failed to do so." The court responded, "Good catch." The court then granted the special motion to strike with leave to amend. Plaintiff's counsel questioned the procedural propriety of the court's ruling: "Procedurally how does that work, your Honor? I don't think—I mean, if you're asking for an independent opinion, I don't think that's possible . . . ." The court gave no response. Defense counsel questioned whether "the special motion to strike is granted with respect to just the defamation claim, denied with respect to the other cause[s] of action?" The court gave no response.

Regarding the evidentiary objections, the court stated, "I'm still looking for the objections which I'm not finding right away. I should have caught that also. [¶] Well, I will have to do that at some later time and I guess notify you by mail since I'm not finding them in this plethora of documents. You did make objections, correct?" Defense counsel responded affirmatively. The court stated, "I'll need to revisit this case because of the objections." On May 18, 2010, the court issued an order overruling 18 of defendants' evidentiary objections. The court sustained the remaining objections. Defendants provided notice of the court's ruling on the anti-SLAPP motion on the same

date. That notice reflected that "Defendants' Special Motion to Strike ([§] 425.16) was granted but Plaintiff was granted 20 days leave to amend." On June 11, 2010, plaintiff filed an objection to the notice of ruling contending, "the notice states that Defendants' special motion to strike was granted in its entirety as to all causes of action, however the Court limited the granting of that motion *with leave to amend* as to the fifth cause of action only." Plaintiff apparently received no response to the objection from either defendants or the court. On June 21, 2010, defendants filed a motion for attorney fees. On June 25, 2010, defendants filed their notice of appeal from the order granting their anti-SLAPP motion with leave to amend. On August 3, 2010, the court denied defendants' motion for attorney fees.[5]

## DISCUSSION

### A. *Introduction*

■  "A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so. ' "While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." ' [Citation.]" (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21 [109 Cal.Rptr.3d 329, 230 P.3d 1117] (*Simpson*).)

"In 1992, out of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16, the anti-SLAPP statute. (§ 425.16, subd. (a).) The statute authorized the filing of a special motion to strike to expedite the early dismissal of these unmeritorious claims. (§ 425.16, subds. (b)(1), (f).) To encourage 'continued participation in matters of public significance' and to ensure 'that this participation should not be chilled through abuse of the judicial process,' the Legislature expressly provided that the anti-SLAPP statute 'shall be construed broadly.' (§ 425.16, subd. (a).)" (*Simpson, supra*, 49 Cal.4th at p. 21.) Nevertheless, despite the strong policy

---

[5] Defendants failed to designate for inclusion in the record on appeal their motion for attorney fees, the reporter's transcript of the hearing on their motion for attorney fees, or the minute order for that hearing. Moreover, the register of actions included in the clerk's transcript reflects a hearing on the motion for attorney fees, but does not indicate how the court ruled on that motion. We have obtained a copy of the August 3, 2010, minute order, which reflects the court's denial of defendants' motion. On our own motion, we take judicial notice of the court's ruling on that motion pursuant to the minute order dated August 3, 2010. (Evid. Code, §§ 452, subd. (d)(1), 459; *People v. Preslie* (1977) 70 Cal.App.3d 486 [138 Cal.Rptr. 828].)

reasons behind the statute's enactment, both the Legislature and the courts have found that the anti-SLAPP statute has as much potential for abuse as the frivolous SLAPP suits it was enacted to summarily resolve. (§ 425.17, subd. (a) ["The Legislature finds and declares that there has been a disturbing abuse of Section 425.16, the California anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16."]; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 96 [124 Cal.Rptr.2d 530, 52 P.3d 703] (dis. opn. of Brown, J.) ["The cure has become the disease—SLAPP motions are now just the latest form of abusive litigation."].)

■ "A special motion to strike involves a two-step process. First, the defendant must make a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.' (§ 425.16, subd. (b)(1).) If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.' [Citation.]" (*Simpson, supra,* 49 Cal.4th at p. 21, fn. omitted.)

### B. Order On Defendants' Anti-SLAPP Motion: Causes of Action One, Two, Three, Four, and Six

Although, on its face, the court's ruling on defendants' anti-SLAPP motion, granting the motion with leave to amend, would suggest that it had granted the motion in its entirety, the context of the hearing on the motion suggests otherwise. The court initially indicated its decision to *deny* the motion *in its entirety.* Only later, after defense counsel raised the issue of plaintiff's failure to properly plead *the defamation cause of action,* did the court change its ruling to grant the motion with leave to amend.

Moreover, both parties below and on appeal appear to concede the court's ruling was intended to deny defendants' anti-SLAPP motion as to all plaintiff's claims except the fifth cause of action for defamation. As recounted above, defense counsel attempted to clarify that the motion was granted with leave to amend only with respect to the defamation cause of action. After defendants issued the notice of ruling, plaintiff objected, contending the document insinuated that the court had granted the anti-SLAPP motion in its entirety instead of merely as to plaintiff's defamation cause of action. Unfortunately, the court failed to respond to either of these attempts at clarification.

On appeal, defendants contend that "the trial court erred when it . . . refused to grant [defendants'] motion as to the entire Complaint." Defendants

recount the same procedural history as we have, and note that "it is unclear whether the trial court granted the motion with respect to all the causes of action or just the defamation claim. In any event, [defendants] assert that the anti-SLAPP motion *should have been granted in its entirety as to all causes of action*, without leave to amend, or at the very least, without leave to amend *as to the defamation claim*." (Italics added.) Defendants maintain in their opening brief that the court's "ruling is a *de facto* denial of the anti-SLAPP motion." (Italics added.) Indeed, in their reply brief, defendants' fourth major point heading reads, "the trial court erred when it failed to grant appellants' anti-SLAPP motion *in its entirety*." (Italics added.) Thus, it is clear that despite the trial court's failure to render an unambiguous ruling, it intended to, and did, grant the motion with leave to amend solely as to plaintiff's defamation cause of action.

Having determined that the court's order granting the anti-SLAPP motion with leave to amend applied only to the fifth cause of action for defamation, we must resolve the issue raised by defendants that the court erred in not granting the motion as to all plaintiff's causes of action.[6] We hold the court acted appropriately in implicitly denying defendants' anti-SLAPP motion as to causes of action one, two, three, four, and six.

■ As noted above, defendants have the initial burden of making "a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Simpson, supra*, 49 Cal.4th at p. 21, fn. omitted.) Specifically, an anti-SLAPP motion is applicable to causes of action that result from a defendant's (1) oral or written statements "made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"; (2) any written or oral statement made in connection with an issue under consideration or review by a governmental body, or any other official proceeding authorized by law; (3) any written or oral statement made in a public place or in a public forum connected to an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or of free speech in connection with a public issue or topic of public interest. (§ 425.16, subds. (b)(1) & (e).)

---

[6] Plaintiff raises the issue that the court erred to the extent it granted the anti-SLAPP motion in its entirety. Plaintiff requests that this court "order the trial court to deny Defendants' anti-SLAPP motion in its entirety; or . . . grant Defendants' anti-SLAPP motion only as to Plaintiff's Defamation cause of action." Because plaintiff filed no notice of appeal from the judgment, this issue is beyond the scope of appellate review. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, §§ 332, 555, pp. 382–383, 632–633.) Nonetheless, our resolution of the matter obviates plaintiff's concern.

"A ruling on a special motion to strike under section 425.16 is reviewed de novo. [Citation.] This includes whether the anti-SLAPP statute applies to the challenged claim. [Citation.] Furthermore, we apply our independent judgment to determine whether [the plaintiff's] causes of action arose from acts by [the defendant] in furtherance of [the defendant's] right of petition or free speech in connection with a public issue. [Citation.] [Only when] these two conditions are satisfied, [do] we . . . then independently determine, from our review of the record as a whole, whether [the plaintiff] has established a reasonable probability that he would prevail on his claims. [Citation.]" (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 624–625 [24 Cal.Rptr.3d 619].)

█ "In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the [four] categories . . . .' " set forth *ante*. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) "In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability . . . is based.' [Citation.]" (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 89.)

Defendants failed to make a prima facie showing that plaintiff's causes of action were based on an act in furtherance of defendants' rights of petition or free speech; hence, contrary to defendants' contention, the burden did not shift to plaintiff to establish a reasonable probability of prevailing. Indeed, we agree with plaintiff's statement that it "is immediately apparent to anyone who reads the Complaint [that this case] is clearly all about race discrimination, harassment and retaliation . . . ."

According to plaintiff's allegations, he, an African-American, had been requested to take punitive action against one of his employees, another African-American, who had filed a racial discrimination claim against Atwater's Caucasian executive assistant. Plaintiff recognized that to do so would violate both the law and the agency's policies. When plaintiff failed to take the requested action, Atwater, a Caucasian, attempted to have one of plaintiff's subordinates take such steps without consulting with plaintiff. Plaintiff intervened. Atwater indicated he would stop; nevertheless, Atwater hounded plaintiff's subordinate to the point of calling her at home. Plaintiff's subordinate came to plaintiff in tears threatening to quit; she eventually did so. Thereafter, Atwater took measures that undermined plaintiff's authority: he hired plaintiff's employees without his input, restructured plaintiff's division, and announced the latter decision in a manner allegedly meant to disgrace him. Atwater gave plaintiff a poor performance review, although

prior reviews had been positive. When plaintiff was later promoted and permitted to report directly to the board, Atwater intervened to the point that the board reinstated plaintiff's duty to report to Atwater. Thus, the pleadings establish that the gravamen of plaintiff's action against defendants was one of racial and retaliatory discrimination, not an attack on Atwater or the board for their evaluations of plaintiff's performance as an employee. (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1284 [65 Cal.Rptr.3d 469] [gravamen of complaint was discrimination, not the exercise of defendant's protected speech].) Indeed, the board meeting is mentioned only minimally in plaintiff's pleadings. Although we make no credibility determination regarding plaintiff's allegations, or weigh the merits of his claims, it is clear that his action does not arise from any purported exercise of defendants' privileged governmental acts, which would be covered by the statute.

The only evidence offered by defendants to prove their prima facie case was Atwater's own uncorroborated and self-serving declaration, which consisted of hearsay and speculation. (See *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 [60 Cal.Rptr.3d 359].) This was insufficient to meet their burden. We agree with the lower court's finding: "This is an action for retaliation and wrongful termination filed by plaintiff . . . against his former employer . . . and . . . Supervisor . . . ." As the court observed, "the gist of this action is clearly not only defamation." "Moreover, if this kind of suit could be considered a SLAPP, then [employers] could discriminate . . . with impunity knowing any subsequent suit for . . . discrimination would be subject to a motion to strike and dismissal." (*Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC, supra*, 154 Cal.App.4th at p. 1288 [§ 425.16 did not apply to disability discrimination suit against landlord who removed tenant through unlawful detainer after tenant refused to disclose nature of her disability].) As the lower court in that case stated: " 'I just feel like to rule for the defendant in this case would be to say that section 425.16 provides a safe harbor for discriminatory conduct and I don't think that's what it's intended to do.' " (*Department of Fair Employment & Housing*, at p. 1288.) Thus, the court acted appropriately in implicitly denying defendants' anti-SLAPP motion as to causes of action one, two, three, four and six.

### C. *Order Granting Anti-SLAPP Motion: Fifth Cause of Action*

Defendants contend the trial court committed legal error in granting their anti-SLAPP motion on the fifth cause of action *with leave to amend*. In other words, they contend the court should merely have granted the motion without giving plaintiff leave to amend because section 425.16 does not contain any provision for amendment of the complaint. Although we believe it was error

for the court to frame its ruling as granting the motion while giving plaintiff leave to amend, we hold that order was an effective denial of the motion. As such, the court acted appropriately—legally, if not technically.

■ "Statutory interpretation is a question of law that we review de novo. [Citation.]" (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724 [122 Cal.Rptr.3d 331, 248 P.3d 1185].) Defendants cite *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068 [112 Cal.Rptr.2d 397] (*Simmons*) for the proposition that granting an anti-SLAPP motion with leave to amend is a legally impermissible exercise of the court's power. In *Simmons*, the plaintiff faced an adverse tentative ruling on the defendant's anti-SLAPP motion. The plaintiff requested leave to amend his cross-complaint. The court issued an order granting the special motion to strike without leave to amend. The plaintiff appealed, contending the court abused its discretion in refusing him leave to amend. (*Id.* at p. 1072.) The court found that "the anti-SLAPP statute makes no provision for amending the complaint *once the court finds the requisite connection to First Amendment speech. . . .* [W]e reject the notion that such a right should be implied." (*Id.* at p. 1073, italics added.) "We conclude the omission of any provision in section 425.16 for leave to amend a SLAPP complaint was not the product of inadvertence or oversight. Accordingly, we refuse [the plaintiff's] invitation to read into section 425.16 an implied right of leave to amend. On the contrary, we believe that granting leave to amend the complaint *after the court finds the defendant had established its prima facie case* would be jamming a procedural square peg into a statutory round hole." (*Id.* at p. 1074, italics added.) "Allowing a SLAPP plaintiff leave to amend the complaint *once the court finds the prima facie showing has been met* would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend." (*Id.* at p. 1073, italics added.)

Subsequent courts have reiterated the holding in *Simmons* that granting an anti-SLAPP motion with leave to amend is beyond the purview of the statute. In *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049 [18 Cal.Rptr.3d 882] (*Sylmar*), the court relied on *Simmons* to hold that a plaintiff had no statutory right to amend a complaint to avoid a ruling on an anti-SLAPP motion. The *Sylmar* court noted that "there is no express or implied right in section 425.16 to amend a pleading to avoid a SLAPP motion." (*Sylmar*, at p. 1055.) Likewise, in *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 1005 [85 Cal.Rptr.3d 880] (*Schaffer*), the appellate court held that the lower court did not err in

denying the plaintiff's request for leave to amend the complaint after the court determined that the defendants made a prima facie showing in their anti-SLAPP motion that the gravamen of the plaintiff's complaint concerned activity protected by the statute. (*Id.* at p. 1004.) The *Schaffer* court quoted directly from *Simmons*: " '[A]llowing a SLAPP plaintiff leave to amend the complaint *once the court finds the prima facie showing has been met* would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy.' [Citation.]" (*Schaffer,* at p. 1005, italics added.)

■ Nevertheless, in *Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858 [90 Cal.Rptr.3d 205] (*Nguyen*), the lower court granted the defendant's anti-SLAPP motion *with leave to amend* because it believed the plaintiff had established a probability of prevailing on her defamation claim, but had neglected to plead the requisite actual malice in her complaint. (*Id.* at pp. 865–866.) The appellate court concluded that "the trial court properly authorized plaintiff to amend her complaint to plead actual malice as reflected in the parties' evidentiary submissions ·for the strike motion. Where the evidence submitted for the motion enables the plaintiff to demonstrate the requisite probability of prevailing on the merits of her defamation claim, the policy concerns against amendment in the anti-SLAPP context do not apply because the plaintiff's suit—shown to be likely meritorious—is not a strategic lawsuit against public participation." (*Id.* at pp. 862–863.)

Distinguishing *Simmons,* *Nguyen* noted, "in seeking amendment here plaintiff did not attempt to void *defendant's showing on the first prong of the anti-SLAPP inquiry*. Specifically, plaintiff's amendment had nothing to do with defendant's assertion his statements were made in connection with his right of petition or free speech. Rather, *assuming that showing had been made*, and in conjunction with her burden on the second prong to show a probability of prevailing on the merits, plaintiff sought to amend the complaint to plead specifically that defendant harbored the requisite actual malice as shown by the evidence presented for the hearing on the strike motion." (*Nguyen, supra,* 171 Cal.App.4th at pp. 870–871, italics added.) "True, a plaintiff may not avoid or frustrate a hearing on the anti-SLAPP motion by filing an amended complaint [citation] but where, as here, the evidence prompting amendment is found in the declarations already submitted for the hearing, there is no risk the purpose of the strike procedure will be thwarted with delay, distraction, or increased costs. [Citations.]" (*Id.* at pp. 871–872.)

We find all the above cases distinguishable because here defendants failed to make an initial prima facie showing on the first prong of the anti-SLAPP statute; in other words, defendants did not meet their burden to show that the allegedly defamatory statements were based on an act in furtherance of

defendants' rights of petition or free speech. Indeed, it is difficult, if not impossible, to see how defendants could have met this burden with plaintiff's failure to specifically plead the allegedly defamatory statements. Indeed, we wholeheartedly agree with defendants' contentions both below and on appeal that plaintiff's failure to specifically plead those statements demonstrates, at least at this stage in the pleadings, that plaintiff had no probability of prevailing on the defamation cause of action. (*Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1612, fn. 5 [284 Cal.Rptr. 244]; 5 Witkin, Cal. Procedure, *supra*, Pleading, § 739, pp. 159–160 [plaintiffs required to specifically plead defamatory statements].) However, section 425.16 has no mechanism for simply skipping over the first prong—defendants' burden to show the statements were protected, and go directly to the second prong—plaintiff's burden to show a probability of prevailing.

This sophistry is precisely what defendants used to persuade the trial court to do when the court reversed course and granted the anti-SLAPP motion, with leave to amend, as to the defamation cause of action. After the trial court indicated its inclination to deny the motion in its entirety, defense counsel argued that the court's conclusion plaintiff had not adequately pled the defamation claim evidenced plaintiff's inability to prove a probability of prevailing. The court responded, "Good catch," and immediately granted the motion with leave to amend. Plaintiff called attention to the procedural impropriety of skipping over defendants' burden of proof to no avail. Thus, the court erred in failing to render a determination that defendants had shown that the defamation cause of action was based on protected activity. Based upon our independent review, we find no basis for such a finding.

Nevertheless, the court's ruling on the motion, although technically improper, was legally correct. As *Nguyen* acknowledged, not all statements made in connection with governmental activities are protected. (*Nguyen, supra*, 171 Cal.App.4th at p. 873 ["false statements uttered with actual malice serve no public interest . . ."].) Thus, neither the trial court, nor we, can simply presume that any statements made by Atwater and the agency regarding plaintiff were protected. Moreover, as noted above, the holdings in *Simmons*, *Schaffer*, and *Sylmar* barred trial courts from granting anti-SLAPP motions with leave to amend only when the defendants had already made a prima facie showing on the first prong. (*Simmons, supra*, 92 Cal.App.4th at pp. 1073–1074; *Schaffer, supra*, 168 Cal.App.4th at p. 1005; *Sylmar, supra*, 122 Cal.App.4th at p. 1055.) Indeed, in *Law Offices of Andrew L. Ellis v. Yang* (2009) 178 Cal.App.4th 869 [100 Cal.Rptr.3d 771], the court noted, "*Simmons* did not hold that parties lose their right to amend a pleading upon the filing of an anti-SLAPP motion by the opposition. Rather, *Simmons* stated that parties lose that right *after a court has made an adverse* ruling by finding the moving party met its burden of proof and finding a prima facie showing has been made." (*Id.* at p. 881.)

Here, the trial court made no finding that defendants had made such a showing. By granting leave to amend, the court "did not attempt to void defendant's showing on the first prong of the anti-SLAPP inquiry," because defendants had failed to make such a showing. (*Nguyen, supra,* 171 Cal.App.4th at pp. 870, 872.) Thus, granting leave to amend here would not pose the " 'procedural quagmire' " foreseen in *Simmons,* and acknowledged in *Nguyen,* of permitting plaintiff to amend his pleadings *after* defendants had succeeded in meeting their burden under the first prong. (*Nguyen,* at p. 872.)

■ Moreover, we agree with *Nguyen* in its observation that an order granting an anti-SLAPP motion with leave to amend is the functional equivalent of a denial of the motion. The appellate court noted that by granting the plaintiff leave to amend the complaint, the court "effectively denied defendant's anti-SLAPP motion." (*Nguyen, supra,* 171 Cal.App.4th at p. 865.) It further observed that "authorizing an amendment under these circumstances is tantamount to denying the strike motion . . . ." (*Id.* at p. 870.) Defendants themselves observe, in their opening brief, that the trial court's "ruling is a *de facto* denial of the anti-SLAPP motion . . . ."

Furthermore, although we utilize the reasoning in *Nguyen* to resolve the instant issue on appeal, we stress what other cases exposited herein have strongly noted: section 425.16 provides no mechanism for granting anti-SLAPP motions *with leave to amend.* (*Simmons, supra,* 92 Cal.App.4th at pp. 1072–1074; *Sylmar, supra,* 122 Cal.App.4th at p. 1055; *Schaffer, supra,* 168 Cal.App.4th at pp. 1004–1005.) Trial courts should either grant or deny such motions in toto, i.e., without leave to amend, prior to ruling on any pending demurrers. A proper ruling on the anti-SLAPP motion would, in most cases, obviate the need to rule on the demurrer at all or, at the very least, in its entirety.

■ Thus, in sum, we hold that an order granting an anti-SLAPP motion with leave to amend is the functional equivalent of an order denying the motion. Regardless of the trial court's reasoning, here, the court properly, "functionally" denied defendants' anti-SLAPP motion as to the defamation cause of action because defendants failed to make a prima facie showing that the allegedly defamatory statements were protected.

### D. *Evidentiary Objections*

Defendants contend the court erred in failing to rule on their evidentiary objections *prior* to ruling on the motion. Moreover, defendants maintain the court erred in overruling 18 of their 33 objections. We agree that the court erred in neglecting to rule on defendants' evidentiary objections prior to ruling on the motion; nonetheless, because plaintiff submitted his declarative evidence in support of an anticipated determination on the second prong of

the anti-SLAPP statute, i.e., that he had a probability of prevailing, the evidence was irrelevant because, as discussed above, the burden never shifted to plaintiff. Thus, any error in ruling on the objections late or erroneously was harmless.

" '[T]he plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial. [Citation.]' [Citation.]" (*Nguyen, supra*, 171 Cal.App.4th at pp. 866–867.) Nevertheless, the burden of producing such evidence is aimed at meeting the second prong of the anti-SLAPP statute, i.e., that a plaintiff has a probability of prevailing on the claim, only *after* a defendant has made a prima facie showing on the first prong. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 646 [49 Cal.Rptr.2d 620], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53 [124 Cal.Rptr.2d 507, 52 P.3d 685]; *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 108 [64 Cal.Rptr.3d 467]; *Moore v. Shaw* (2004) 116 Cal.App.4th 182, 193–194 [10 Cal.Rptr.3d 154]; *Mattell, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188 [121 Cal.Rptr.2d 794].)

"Rulings on the evidentiary objections are necessary before the trial court or this court can determine whether [the plaintiff] has presented admissible evidence *that demonstrates a probability of prevailing on the merits of her claims*. Rulings on evidentiary objections involve an exercise of discretion, and it is the trial court's responsibility to rule on the objections in the first instance." (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1347–1348 [63 Cal.Rptr.3d 798], fn. omitted, italics added [anti-SLAPP case].) " 'Trial courts have a duty to rule on evidentiary objections.' [Citation.] When that duty is not performed, appellate courts are left with the nebulous task of determining whether the ruling that was purportedly made was within the authority and discretion of the trial court and was correct. In our view, it was error for the trial court to omit to perform its duty to rule on evidentiary objections." (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 235 [114 Cal.Rptr.2d 151] [motion for summary judgment].) The trial court must rule on written evidentiary objections made prior to and oral objections made at the hearing on a motion. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 531–532 [113 Cal.Rptr.3d 327, 235 P.3d 988] [motion for summary judgment].)

Although the court should have ruled on the evidentiary objections prior to ruling on the motion, we fail to see how such a ruling, even if completely favorable to defendants, would have aided them in making their prima facie showing that the essence of plaintiff's claims concerned defendants' protected speech. By contending otherwise, defendants are putting the proverbial cart before the horse. As discussed *ante*, it "is immediately apparent to anyone

who reads the Complaint [that this case] is clearly all about race discrimination, harassment and retaliation . . . ." Plaintiff failed to plead the defamation claim with sufficient specificity that anyone could discern whether the allegedly defamatory statements concerned defendants' protected speech. If plaintiff cannot amend the complaint to allege specific, unprotected speech, then defendants' remedy may well be a sustained demurrer without leave to amend or a subsequently granted anti-SLAPP motion. Therefore, the procedural posture of the case below made it irrelevant that the court neglected to rule on defendants' evidentiary objections. We therefore find no reversible error.

### E. Motion For Attorney Fees[7]

Defendants contend the court erred in denying their motion for attorney fees. First, we note that defendants failed to file a notice of appeal from the order denying their motion for attorney fees. Thus, even assuming the order was appealable, we have no jurisdiction to consider it. Second, even to the extent we have jurisdiction to address the issue, as noted in footnote 5 *ante*, defendants have failed to provide this court with a record sufficient for us to address the issue. Third and finally, our holding that the court's order granting the anti-SLAPP motion with leave to amend was the functional equivalent of a denial means that defendants were not the prevailing parties on the motion; therefore, they were not entitled to an award of attorney fees.

"In general, the party prevailing on a special motion to strike may seek an attorney fees award through three different avenues: simultaneously with litigating the special motion to strike, by a subsequent noticed motion, or as part of a cost memorandum at the conclusion of the litigation. [Citations.]" (*Melbostad v. Fisher* (2008) 165 Cal.App.4th 987, 992 [81 Cal.Rptr.3d 354].) "[W]hen the attorney fee order is rendered after a judgment of dismissal upon granting the anti-SLAPP motion, the order is directly appealable under [section] 904.1[, subdivision] (a)(2) as an order after an appealable judgment." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2010) ¶ 2.135.14, p. 2-72.1 (rev. # 1, 2010); see also *Melbostad*, at p. 993, fn. 7.) *Melbostad* held that the defendant's failure to timely file a notice of appeal from an order on a motion for attorney fees rendered *after* the order granting its anti-SLAPP motion, deprived the court of jurisdiction to consider the appeal, even though the defendant ultimately filed

---

[7] Plaintiff contends that, to the extent we find he was victorious on the anti-SLAPP motion, the court erred in neglecting to award him attorney fees. As discussed in footnote 6 *ante*, any issues he raises are beyond the scope of review because he failed to file a notice of appeal. Moreover, plaintiff has failed to show he requested attorney fees. It is axiomatic that appellate courts cannot review issues never raised in the court below. (9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 334, 400, pp. 385–386, 458–459; see also *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].)

a notice of appeal from an order rendering final judgment thereafter. (*Melbostad*, at p. 990.) On the other hand, in *Doe v. Luster* (2006) 145 Cal.App.4th 139 [51 Cal.Rptr.3d 403], the court found that a "special motion to strike and . . . motion for attorney fees present the trial court with separate, albeit related, issues—issues, which . . . need not be presented to the court at the same time. [Citation.] If the motion for fees under section 425.16, subdivision (c), is filed after the trial court rules on the special motion to strike . . . the order awarding or denying those fees is not an 'order granting or denying a special motion to strike'; and no plausible argument can be made that such an order is immediately appealable under section 425.16, subdivision (i)." (*Id.* at p. 150.) Thus, even if a party files a separate notice of appeal from a court's order denying attorney fees, the reviewing court would not have jurisdiction to consider the matter until and unless the party filed a notice of appeal from a final appealable judgment. (*Id.* at pp. 142, 150.)

■ Finally, "[a] motion for attorney fees incurred in connection with a prejudgment appealable order, such as an order granting or denying a special motion to strike, is a 'claim for services' rendered *before* 'the rendition of judgment.' It is not a claim 'for services *up to and including* the rendition of judgment.' " (*Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 464 [59 Cal.Rptr.3d 839].) Thus, a party may file a motion for attorney fees when it prevails on an anti-SLAPP motion, up to and including the time of the rendition of a final judgment, and may then appeal the court's ruling on attorney fees. (*Id.* at pp. 462–468.) While none of these cases is directly on point, the single coherent thread weaving through the tapestry of cases on anti-SLAPP motions for attorney fees, as well as any cursory review of basic appellate procedure, is that a party must, at minimum, file a notice of appeal from the order ·on the motion for attorney fees itself, or from a final appealable judgment entered thereafter. Therefore, this court has no jurisdiction to hear an appeal from an order rendered *after* defendants filed a notice of appeal from an appealable interlocutory judgment.

Here, defendants failed to file a notice of appeal from the order denying their motion for attorney fees premised on their purported triumph on the anti-SLAPP motion. Defendants filed their motion for attorney fees on June 21, 2010. Defendants filed their one, and only, notice of appeal on June 25, 2010, specifically appealing "from the ruling entered on or about May 11, 2010, . . . granting, with leave to amend, Defendants' Special Motion to Strike Plaintiff['s] Complaint as a [SLAPP] pursuant to . . . section 425.16." Their notice of appeal makes no mention of an intent to appeal the court's ruling on their motion for attorney fees. Of course, such an indication would

have been impossible, unless defendants were gifted with prescience, because the court did not issue a ruling on defendants' motion for attorney fees until August 3, 2010. Defendants have apparently not filed any notice of appeal from that subsequent ruling. Thus, this court is without jurisdiction to address the court's ruling denying defendants' motion for attorney fees.

Moreover, even if this court did have jurisdiction to address the issue, defendants have failed to provide this court with an adequate record upon which to base such a decision. (Cal. Rules of Court, rules 8.120–8.122.) Defendants have not provided this court with a copy of their motion for attorney fees, a reporter's transcript of the hearing on their motion for attorney fees, or a copy of the minute order of that hearing. Indeed, the only evidence in this record that such a motion was made, and heard, is contained in the register of actions; however, even the register of actions fails to indicate how the court ruled on the motion. Thus, to the extent we have jurisdiction to address the issue, defendants' failure to provide this court with an adequate record precludes any determination in their favor. (See *Advanced Choices, Inc. v. State Dept. of Health Services* (2010) 182 Cal.App.4th 1661, 1670 [107 Cal.Rptr.3d 470] [appellate court must ignore issues requiring review of documents not provided by appellant].)

■■■ Finally, because the court's order granting defendants' anti-SLAPP motion with leave to amend was the functional equivalent of a denial, defendants were not "prevailing parties" entitled to attorney fees. "The anti-SLAPP statute reflects the Legislature's 'strong preference for awarding attorney fees to successful defendants.' [Citation.] The term 'prevailing party' must be 'interpreted broadly to favor an award of attorney fees to a partially successful defendant.' [Citation.] However, a fee award is not required when the motion, though partially successful, was of no practical effect. [Citation.]" (*Lin v. City of Pleasanton* (2009) 176 Cal.App.4th 408, 425–426 [96 Cal.Rptr.3d 730].) "Where the results of the motion are ' "minimal" ' or 'insignificant' a court does not abuse its discretion in finding the defendant was not a prevailing party. [Citations.]" (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 340 [42 Cal.Rptr.3d 607].) If "the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion . . ." the trial court acts within its discretion in denying a motion for attorney fees. (*Ibid.*)

Here, as noted above, the trial court's granting of defendants' anti-SLAPP motion with leave to amend was the functional equivalent of a denial. Thus, defendants gained no practical benefit and we cannot say that the trial court abused its discretion in denying their motion for attorney fees.

## DISPOSITION

The judgment is affirmed. Respondent is awarded his costs on appeal.

Hollenhorst, Acting P. J., and Richli, J., concurred.