Filed 5/23/23 Chuang v. Chuang CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MEI HAW CHUANG et al., | H048994 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No. 20CV371732) |
| v. | |
| SHERRY CHUANG et al., | |
| Defendants and Appellants. | |

In this long-running family dispute, defendants Sherry Chuang and her husband Alexander Liu appeal from the denial of a motion to strike under Code of Civil Procedure section 425.16, the California anti-SLAPP statute.[1] Although the complaint alleged some activity protected by the statute, the trial court ruled that none of the claims asserted in the complaint arise out of this activity and denied the motion. On appeal, defendants do not argue that the trial court should have struck the entire complaint or, indeed, any of the causes of action pleaded. Instead, they argue that the trial court erred in rejecting their alternative argument that several causes of action

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

include claims arising out of protected activity and therefore allegations in 14 paragraphs should be struck.[2]

For the reasons explained below, we affirm the denial of defendants' motion to strike. While the background section of the complaint includes allegations concerning prior litigation that involve protected activities, the relevant cause of action clearly states that it is not based on those allegations, and plaintiffs credibly denied basing a claim on those activities. Defendants' other arguments fail because they concern allegations that either do not concern protected activities or are not the basis of any claim. Accordingly, we affirm the trial court's order.

## I. FACTS AND PROCEDURAL BACKGROUND

We draw the following facts from the pleadings and the supporting declarations submitted in the trial court (§ 425.16, subd. (b)(2)), accepting plaintiffs' submissions as true at this stage. (See, e.g., *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

### A.

Plaintiff Mei Haw Chuang (Mei) is the mother of plaintiff Shiuh Kai Chuang (Lisa), and Lisa in turn is married to plaintiff Alessio Lisi.[3] Defendant Sherry Chuang (Sherry) is Mei's daughter as well as Lisa's older sister, and she is married to defendant Alexander Liu.

---

[2] In the trial court defendants sought to strike 16 allegations in 15 paragraphs; on appeal, they seek to strike allegations in only 14 of these paragraphs plus another not mentioned below.

[3] As several parties share the same last name, we refer to the parties by their first names for the sake of clarity and convenience. In doing so, we intend no disrespect. (See, e.g., *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 550, fn. 2.)

Mei and her late husband Ying Cheh Chuang (Ying) purchased several properties in Palo Alto with their daughters. The first property, on Clara Drive, was bought in 2002. Mei and Ying provided a down payment of $300,000 as a gift to their daughters, who each became 50 percent owners of the Clara Drive property. Lisa and her family were to live on Lisa's side of the property and Mei and Ying on Sherry's side, rent free in exchange for providing caretaker services for Sherry's children and hosting Airbnb guests.

In 2007, Mei and Ying provided a $700,000 down payment on a property on Pomona Avenue on which Sherry and her husband were to live. Although Sherry was responsible for the mortgage, Mei retained 30 percent ownership of this property, and Sherry agreed to pay Mei the proceeds from renting her portion of the property, which apparently had multiple dwellings. In 2008, Mei and Ying purchased a third property, a residential condominium on Sheridan Avenue, which is now fully owned by a survivor's trust established for Mei.

In addition to gifting Sherry ownership interests in the Clara Drive and Pomona Avenue properties, Mei and Ying entrusted Sherry with control over virtually all of their financial affairs. For example, Sherry collected the rents owed to Mei for the Pomona Avenue and Sheridan Avenue properties. In addition, Mei and Ying gave Sherry power of attorney over many of their bank accounts.

In 2017, this arrangement fell apart. Mei and Ying discovered that Sherry had diverted nearly $500,000 from their bank accounts into hers. Although Mei and Ying were able to recoup about $50,000, and Sherry later agreed to return another $130,000, over $300,000 still remains outstanding. Not surprisingly, Mei and Ying removed Sherry's power of attorney, which allegedly infuriated Sherry. In 2019, after Ying passed away, Mei disinherited Sherry.

Also in 2019, Sherry began to withhold rental monies for the Pomona Avenue property and, several months later, the Sheridan Avenue property. Later that year,

3

Sherry filed three separate actions seeking to partition by sale the Clara Drive, Pomona Avenue, and Sheridan Avenue properties. In those partition actions, which the complaint describes as "maliciously filed," Sherry claimed offsets with respect to the first two properties for rents supposedly owed by Lisa's family and Mei for occupying the Clara Drive property, and for 30 percent of the mortgage on the Pomona Avenue property owed by Mei.

The partition actions allegedly began a campaign of harassment by Sherry. As detailed in paragraphs 26 and 27 of the complaint, Sherry attempted to take control over Mei's daily activities by monitoring her with video cameras, including one pointed toward her bathroom. Sherry also belittled Mei; stole her keys and locked her out of the Clara Drive property; removed her personal belongings; and broke through a window on Lisa's side of the property to prevent Mei from meeting with her attorney—all while continuing to require Mei to host Airbnb guests during the COVID-19 pandemic.

As detailed in paragraph 28, Sherry also harassed Lisa and her family. Sherry blocked the driveway; harassed Lisa's guests; entered Lisa's home without permission and took pictures of it; aggressively engaged Lisa's children; videotaped the children inside and outside the home as well as returning from school; cut the wires on security cameras; and jammed herself into doorways so that she could harass Lisa and her family. In addition, Sherry impersonated Lisa on a call with Child Protective Services to obtain private and confidential information.

Later, when Lisa's attorney sent a cease-and-desist letter concerning Sherry's aggressive and intrusive treatment of Lisa's children, Sherry's attorney replied that the children should leave the Clara Drive property, their home. Eventually, in March 2020, Sherry moved into the Clara Drive property to better monitor Mei and Lisa. When Mei subsequently obtained a temporary restraining order against Sherry, Sherry stopped visiting the property to avoid service of the order, but in opposing the

4

temporary restraining order she later represented that she resided on the property and could not be excluded from it. Sometime around August 2020, Mei discovered that Sherry had taken Mei's smart phone and sent herself messages in which Mei purportedly apologized to Sherry and said that she did not want any rental income from one of the properties.

**B.**

In October 2020, Mei, Lisa, and Lisa's husband Alessio sued Sherry and her husband Alexander in Santa Clara County Superior Court. Plaintiffs' complaint alleges nine counts or causes of action. Five of these causes of action concern Mei alone. She alleges both physical elder abuse under Welfare and Institutions Code section 15610.07 and financial elder abuse under Welfare and Institutions Code section 15610.30, conversion, breach of fiduciary duty, and unauthorized computer access and fraud, in addition to seeking an accounting.

The complaint also contains four causes of action against Sherry on behalf of all plaintiffs: intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, and private nuisance. As outrageous conduct, the intentional infliction of emotional distress cause of action alleges that Sherry stole money from Mei, accessed Mei's smart phone in violation of Penal Code section 502 and "embarked on a campaign of abuse and harassment against Plaintiffs (as alleged in paragraphs 26-28)."

**C**.

Defendants moved to dismiss the entire complaint under the anti-SLAPP statute. In the alternative, they sought to strike allegations in fifteen paragraphs in the complaint's background section under *Baral v. Schnitt* (2016) 1 Cal.5th 376 (*Baral*).

The trial court denied the motion in its entirety. The court acknowledged that the complaint contained allegations concerning the partition actions and the restraining order sought by Mei that are protected activities under the anti-SLAPP statute.

However, it ruled that defendants had failed to show that plaintiffs' claims arise out of such activity. While the trial court's order focused on defendants' request to strike the whole complaint, the order noted that at oral argument defendants had invoked *Baral*.

After the trial court's order was served, defendants filed a timely notice of appeal.

## II. DISCUSSION

In *Baral*, *supra*, 1 Cal.5th 376 and *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*), the California Supreme Court held that the way a plaintiff chooses to group claims into a complaint's counts or causes of actions does not determine how the anti-SLAPP statute applies. Instead, courts should analyze all claims pleaded in a count or cause of action. (*Bonni*, at p. 1011; *Baral*, at p. 393.) And where "mixed" claims based on protected as well as unprotected activities are asserted, the plaintiff must make a prima facie showing of the merits of any claim based on protected activities. (*Baral*, at p. 396.)

Defendants contend that the trial court ignored *Baral* and never examined whether the complaint alleged mixed causes of action with claims arising out of protected activities. In fact, the trial court expressly recognized that defendants had invoked *Baral* but rejected their arguments under it. On this record, we see no error in the trial court's conclusions. (See, e.g., *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336 ["[I]t is axiomatic that we review the trial court's rulings and not its reasoning."].) Although defendants point to some allegations concerning protected activities, they fail to demonstrate that any claims arise out of such activities.

A. *The Anti-SLAPP Statute*

Section 425.16 was enacted to combat strategic lawsuits against public participation (SLAPPs): " 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' "

6

(*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1242, quoting § 425.16, subd. (a); see also *FilmOn.com Inc. v. DoubleVerify, Inc.* (2019) 7 Cal.5th 133, 143 (*FilmOn.com*) [noting that the "paradigmatic SLAPP suit" involves a well-funded developer suing protestors to stifle opposition to a project].)  The anti-SLAPP statute authorizes special motions to strike prior to discovery in which the merits of a plaintiff's claims are evaluated in " 'a summary-judgment-like procedure.' " (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321-322, 324; *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)  Such motions are considered on an expedited schedule (§ 425.16, subd. (f)), during which discovery is stayed (*id*., subd. (g)), and successful defendants generally receive attorney fees (*id*., subd. (c)).

Anti-SLAPP motions may be filed to strike claims "arising from" activities "in furtherance of the person's right of petition or free speech . . . in connection with a public issue." (§ 425.16, subd. (b)(1).)  Motions properly targeting a claim arising out of protected activities must be granted unless the plaintiff establishes "a probability that the plaintiff will prevail on the claim." (*Ibid*.)  Accordingly, courts use a two-step process to evaluate anti-SLAPP motions. (See, e.g., *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619-621 (*Rand*); *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 759-760 (*Laker*).)  First, a defendant moving to strike bears a threshold burden of identifying allegations of protected activity and demonstrating that claims arise out of that activity. (*Rand*, at p. 620; *Baral*, *supra*, 1 Cal.5th at p. 396.)  Second, if that is done, the burden shifts to the plaintiff to demonstrate that each claim arising out protected activity is legally sufficient and supported by evidence adequate to support a favorable judgment. (*Baral*, at p. 396; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89 (*Navellier*).)

The moving defendant's threshold burden is "not always easily met." (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66.)  To satisfy the burden, the defendant must identify allegations concerning an act that is in furtherance

7

of the right of petition or free speech as defined by section 425.16, subdivision (e) and thus a " 'protected activity' " under the anti-SLAPP statute. (See *Laker*, *supra*, 32 Cal.App.5th at p. 760 & fn. 11.) The defendant also must show that a claim "arises from" the protected activity. In particular, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*City of Cotati*).) "[A] claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity," much less from protected activity that "merely provides evidentiary support or context for the claim." (*Rand*, *supra*, 6 Cal.5th at p. 621; see also *Baral*, *supra*, 1 Cal.5th at p. 394 ["Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16."].) Instead, "the protected activity must 'supply elements of the challenged claim' " and thereby " 'provide[] the basis for liability.' " (*Rand*, at pp. 621, 628, quoting *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1064-1065 (*Park*).)

We review *de novo* the grant or denial of an anti-SLAPP motion, exercising independent judgment in determining whether the defendant satisfied its threshold burden of identifying allegations of protected activity and demonstrating that claims arise from that activity. (*Park*, *supra*, 2 Cal.5th at p. 1067.) In so doing, we consider the pleadings as well as affidavits concerning the facts on which liability rests (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 111), and examine the elements of the claims, the actions allegedly establishing those elements, and whether those actions are protected activities (*Bonni*, *supra*, 11 Cal.5th at p. 1015). If a cause of action involves both protected and unprotected activity, the unprotected activity is disregarded. (*Baral*, *supra*, 1 Cal.5th at p. 396.)

8

B. *Intentional Infliction of Emotional Distress*

Defendants' appeal focuses on the complaint's fifth cause of action, which is for intentional infliction of emotional distress. In support of that cause of action, plaintiffs alleged that Sherry engaged in "conduct [that] was outrageous" because she stole money from her mother Mei; "embarked on a campaign of abuse and harassment against Plaintiffs (as alleged in paragraphs 26-28)"; and illegally accessed Mei's phone. Defendants argue that the alleged "campaign of abuse and harassment" includes protected activities and that intentional infliction claims arise out of those activities.

These arguments are unpersuasive. While defendants identify several allegations concerning protected activities, they fail to demonstrate that plaintiffs asserted any intentional infliction claims arising out of those activities.

1.

In arguing that intentional infliction claims arise out of protected activity in the alleged campaign of abuse and harassment, defendants point to only two allegations in paragraphs 26 through 28, the paragraphs that the complaint identified as containing the outrageous conduct in the campaign. Neither allegation, however, involves protected activity.

One allegation, which appears in paragraph 27, is that Sherry rented out portions of the Clara Drive property to Airbnb guests and forced Mei to host the guests without compensation. The anti-SLAPP statute protects acts in furtherance of the right of petition or free speech. (§ 425.16, subd. (b)(1).) In addition, the statute defines such acts to include written or oral statements made before an official proceeding (*id.*, subd. (e)(1)), written or oral statements made in connection with such a proceeding (*id.*, subd. (e)(2)), written or oral statements made in a place open to the public or a public forum in connection with an issue of public interest (*id.*, subd. (e)(3)), and expressive conduct that "may similarly communicate views regarding 'matters of

9

public significance.' " (*Wilson v. Cable News Network, Inc*. (2019) 7 Cal.5th 871, 893, quoting § 425.16, subd. (e)(4)).  By renting to Airbnb guests and forcing Mei to host them, Sherry did not make any written or oral statements.  Nor did she engage in any expressive conduct concerning matters of public interest.  As a consequence, the allegation in paragraph 27 identified by defendants does not involve an act in furtherance of the right of petition or free speech and is not a protected activity under the anti-SLAPP statute.

Nor is the allegation identified in paragraph 28.  Defendants point to an allegation that Sherry impersonated Lisa on a call with Child Protective Services.  Defendants assert that this call is a protected activity under *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, which held that reports to government authorities of child abuse are protected as statements made in connection with an issue under consideration by an official proceeding.  But there is no suggestion that Sherry reported child abuse or otherwise made any statement relating to an issue under consideration by Child Protective Services.  The complaint merely alleges that she impersonated Lisa "to gain private and confidential information."  While Sherry denies this, she does not contend that she spoke with Child Protective Services concerning any issue under investigation.  Thus, with respect to her call with Child Protective Services, Sherry has not shown any statement "in connection with an issue under consideration or review by . . . any . . . official body" (§ 425.16, subd. (e)(2)) or other act in furtherance of the right of petition or free speech under the anti-SLAPP statute (see *Rand*, *supra*, 6 Cal.5th at p. 620 [under subdivision (e)(2), " 'it is insufficient to assert that the acts alleged were "in connection with" an official proceeding.' [Citation]  Instead, '[t]here must be a connection with the issue under review in that proceeding.' "]).

2.

Defendants also point to allegations in the background section of the complaint not referenced in the fifth cause of action or otherwise identified as the basis of an intentional infliction claim. Defendants' strongest arguments concern the partition actions involving the Clara Drive, Pomona Avenue, and Sheridan Avenue properties. In paragraphs 16 to 18, the complaint alleges that Sherry "maliciously" filed these actions, and paragraph 32 alleges that the ownership interest asserted by Sherry in the Sheridan Avenue property is "specious." In addition, paragraph 24 alleges that the partition actions were part of a "vindictive campaign of harassment against Plaintiffs" in which Sherry rejected "[r]easonable attempts to settle the lawsuits amicably" and "engaged in . . . scorched earth litigation." In light of these allegations, Defendants argue that the partition actions are part of the "campaign of abuse and harassment" forming one of the three identified bases for the intentional infliction cause of action.

There are substantial grounds for this argument. Sherry's filing and conduct of the partition actions are activities protected by the anti-SLAPP statute. The statute protects acts in furtherance of the right of petition or free speech, which are defined to include statements made "before a . . . judicial proceeding" (§ 425.16, subd. (e)(1)) and "in connection with an issue under consideration or view by a . . . judicial body" (*id.*, subd. (e)(2)). As a consequence, it is well-settled that the anti-SLAPP statute protects both the "act of filing litigation" and the conduct of litigation. (*Navellier*, *supra*, 29 Cal.4th at p. 90; see *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.)

In addition, the allegations in background section of the complaint concerning the partition actions suggest that an intentional infliction claim might be based on them. A key element of intentional infliction of emotional distress is "extreme and outrageous conduct" intended to cause, or recklessly disregarding the probability of,

11

emotional distress. (*Potter v. Firestone Tire & Rubber Co*. (1993) 6 Cal.4th 965, 1001 (*Potter*).) The background section's allegations suggest that the partition actions fit this bill: they allege that the partition actions were "maliciously" filed, "specious," and part of a "tirade of relentless harassment and scorched earth litigation." As a consequence, reading through the background section, one reasonably might expect the intentional infliction cause of action to be based in part on the partition actions.

The actual cause of action, however, clearly indicates that it is not based on the partition actions. The complaint's fifth cause of action, which describes the intentional infliction of emotional distress claims, includes in Sherry's conduct that "was outrageous" her "campaign of abuse and harassment" against plaintiffs. However, the cause of action does not allege that all of the campaign was outrageous. While the background section of the complaint devotes eight paragraphs, paragraphs 24 to 31, to the campaign, the intentional infliction cause of action references only three of those paragraphs: it states that Sherry "embarked on a campaign of abuse and harassment against Plaintiffs *(as alleged in paragraphs 26-28)*." (Italics added.) Although these three paragraphs list nearly two dozen actions, the partition actions are not among them. The partition actions are described in paragraphs 16 to 18, 24, and 32, not paragraphs 26 through 28. Thus, even though the background section's allegations suggest that the intentional infliction cause of action might be based in part on the partition actions, the cause of action itself shows that in fact they are not.

This conclusion is supported by plaintiffs' clear and unequivocal denial that the intentional infliction cause of action is based on the partition actions. In opposing the anti-SLAPP motion, plaintiffs informed the trial court that their complaint "merely references, for background context, the partition actions . . . ." The intentional infliction cause of action, they explained, was "based on . . . Sherry's conduct as alleged in paragraphs 26 through 28 *only*" and "does not rely in any way on Sherry's

12

purported protected activity, especially given that paragraphs 26-28 of the Complaint do not include Sherry's lawsuits . . . ."

There is no reason to question these representations. A plaintiff is generally the master of his or her complaint and may craft claims as he or she chooses. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1202; *Moreau v. San Diego Transit Corp.* (1989) 210 Cal.App.3d 614, 620.) While a plaintiff cannot evade an anti-SLAPP motion—and in particular the attorney fees to which a prevailing party is entitled—by amending or dismissing a complaint (see, e.g., *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1054-1056), a plaintiff nonetheless is entitled to some deference in determining what claims he or she alleged. Consequently, in evaluating anti-SLAPP motions, courts generally should credit a plaintiff's representation that a claim is not based on protected activity when a complaint is ambiguous and the representation reflects a reasonable interpretation— especially where, as here, a count or cause of action is based on a broad course of conduct. And protected activity would be at best a minor aspect of that conduct.

Finally, defendants are not saved by the fact that plaintiffs are seeking punitive damages and allege that Sherry's outrageous conduct was malicious. While plaintiffs also allege that the partition actions were "maliciously" filed, it does not follow that plaintiffs' request for punitive damages arises out of the partition actions. At best, those actions might provide evidence of Sherry's malice in engaging in the outrageous conduct on which the intentional infliction claim is based. A claim, however, does not arise from protected activity that " 'merely provides evidentiary support' " for the claim. (*Rand*, *supra*, 6 Cal.5th at p. 621.) Indeed, the Supreme Court has expressly warned that the anti-SLAPP statute is not satisfied by speech "evidencing an illicit motive." (*Park*, *supra*, 2 Cal.5th at p. 1067.)

13

Thus, defendants have failed to demonstrate that any intentional infliction claim arises out of allegations concerning the partition actions.[4]

3.

Defendants also seek to strike an allegation in paragraph 29 of the complaint that Sherry's attorney responded to a cease-and-desist letter demanding that she stop terrifying Lisa's children by "callously" recommending that the children move out of their home on the Clara Drive property. This response may qualify as a statement in connection with potential litigation and thus be a protected activity under the anti-SLAPP statute. (See § 425.16, subd. (e)(2).) But defendants are unable to point to anything suggesting that plaintiffs based an intentional infliction claim on this response. The response is not included in paragraphs 26 through 28, the paragraphs identifying the outrageous conduct in Sherry's alleged campaign of abuse and harassment. Nor does the characterization of the response as "callous[]" suggest that plaintiffs based an intentional infliction claim on it. To the contrary, mere callousness is a long way from the conduct exceeding all bounds tolerated in a civilized society needed to state an intention infliction claim. (See *Potter*, *supra*, 6 Cal.4th at p. 1001.) Thus, defendants have failed to demonstrate that any intentional infliction claim is based on the attorney's response.

4.

Defendants seek to strike other allegations in connection with the intentional infliction cause of action but fail to show that these allegations involve protected activities.

---

[4] Because no claim arises out of the partition actions, we decline both of defendants' requests to take judicial notice of rulings in the Sheridan Avenue partition action.

14

For example, defendants point to allegations in paragraph 3 of the complaint that Sherry engaged in an "outrageous campaign of revenge and harassment," "misappropriated Mei's rent money," and "performed self-interested accountings." None of this conduct, however, involves any statement or expressive conduct that might qualify as acts in furtherance of the right of petition or free speech. As a consequence, defendants have failed to identify any protected activity in paragraph 3.

Defendants also point to allegations in paragraphs 20 and 33 that Sherry collected rental payments for Mei from the Pomona Avenue and Sheridan Avenue properties but "failed to provide an accounting of previous rent collected" and an allegation in paragraph 34 that Sherry fabricated messages on Mei's phone. Although defendants note the allegation that this fabrication has "civil and criminal implications," they fail to show that either the fabrication or the failure to account for the rents collected involve statements or expressive conduct that qualify as acts in furtherance of the right of petition or free speech.[5]

Finally, defendants seek to strike the allegations in paragraph 33 referring to litigation. The paragraph, however, makes only a passing reference to litigation, alleging that defendants "refuse to provide a full accounting" and their misappropriation of funds from Mei "will undoubtedly continue until adjudication." Whether or not it will continue until a judicial resolution, Sherry's refusal to explain what she has done with rents collected on Mei's behalf does not involve any statements or expressive conduct and thus is not an act in furtherance of the right of petition or free speech under the anti-SLAPP statute.

---

[5] Defendants also seek to strike the allegation in paragraph 34 concerning Sherry's impersonation of Lisa with Child Protective Services, but as shown above that conduct is not protected activity either.

The trial court correctly denied Defendants' request to strike allegations concerning the intentional infliction cause of action.

C. *Elder Abuse*

Defendants also seek to strike allegations concerning elder abuse. Here again, however, they fail to satisfy their threshold burden of demonstrating such a claim arising out of protected activity.

Defendants contend that the complaint alleges elder abuse claims based on allegations in paragraphs 20 and 29 that Sherry refused to share rents she collected or to provide an accounting of them and forced Mei to host her Airbnb guests at the Clara Drive property. As shown above, these allegations do not concern protected activity.

Defendants also contend that elder abuse claims arise out of the allegations concerning the partition actions. While these allegations involve protected activities, no elder abuse claim arises out of them. The complaint alleges both "physical elder abuse" and "financial elder abuse." The physical abuse claim, however, is based on Welfare and Institutions Code section 15610.07, which defines elder abuse to include "[p]hysical abuse, neglect, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering." (Welf. & Inst. Code, § 15610.07, subd. (a)(1).) The partition actions do not involve any physical abuse, neglect, isolation, or abduction. Moreover, under well-established principles of interpretation, the "other" treatment identified in the statute must be construed to mean conduct of a similarly physical nature. (See *FilmOn.com*, *supra*, 7 Cal.5th at p. 144; see also *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141 ["[I]f the Legislature intends a general word to be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of things since those descriptions then would be surplusage."].) The partition actions, however, have no physical nature, and thus the physical abuse claim plainly does not arise out of those actions.

16

The financial elder abuse claim also does not arise out of the partition actions. The financial abuse claim is based on Welfare and Institutions Code section 15610.30. Under that provision, financial abuse occurs when a party "[t]akes, secretes, appropriates, obtains, or retains" the property of an elder "for a wrongful use or with intent to defraud." (Welf. & Inst. Code, § 15610.30, subd. (a)(1).) Accordingly, the complaint alleges that defendants "secreted, appropriated, obtained, or retained the property of Mei." While the allegations earlier in the complaint concerning Sherry's misappropriation of funds from the bank accounts of Mei and her late husband and failure to pay rents for the Pomona Avenue and Sheridan Avenue properties describe such conduct, the partition actions do not because there is no allegation that Sherry took or obtained any property as a result of such actions. Thus, the financial elder abuse claim does not arise out of the partition actions either.

D. *Private Nuisance*

Defendants next contend that the complaint asserts nuisance claims arising out of their attorney's allegedly "callous[]" response to the cease-and-desist letter and positions taken by Sherry in opposing the temporary restraining order sought by Mei. Here again, defendants fail to satisfy their threshold burden.

While, as noted above, the response to the cease-and-desist letter by defendants' attorney may be protected activity, defendants have not demonstrated that any nuisance claim arises out of it. A nuisance is "injurious to health," "indecent or offensive to the senses," "an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property," or an unlawful obstruction of "free passage or use." (Civ. Code, § 3479; see also *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938 [requiring a "*substantial*" "invasion of the plaintiff's interest in the use and enjoyment of land"].) It is unclear how the allegedly callous response of Defendants' attorney to the cease-and-desist letter could qualify as a nuisance, and nothing in the complaint suggests that plaintiffs attempted to base a

17

nuisance claim on the response. The complaint claims that Sherry "created conditions so as to interfere with Plaintiffs' comfortable enjoyment of life and property" by, among other things, entering Lisa's home without permission; breaking through a window and jamming herself into doorways to interfere with conversations and harass plaintiffs; going through Lisa's mail; harassing her guests; blocking the driveway; repeatedly knocking while Alessio was on conference calls; installing security cameras; aggressively engaging with Lisa's children; and invasively videotaping them. Defendants do not point to anything in the complaint suggesting that plaintiffs also claim nuisance based on the response to the cease-and-desist letter from defendants' attorney.

At most, the response's suggestion that Lisa and Alessio's children move out of the Clara Drive property indicated that Sherry intended to continue to interfere with their comfortable enjoyment of the property. The Supreme Court has long recognized that the anti-SLAPP statute requires a tighter nexus. For a claim to arise from an act under the statute, the act " 'must *itself* have been an act in furtherance of the right of petition or free speech.' " (*Park*, *supra*, 2 Cal.5th at p. 1063, quoting *City of Cotati*, *supra*, 29 Cal.4th at p. 78.) Acts that "merely lead to the liability-creating activity" are insufficient. (*Park*, at p. 1064; see also *id*. at p. 1060 [The anti-SLAPP statute requires more than "a step leading to some different act for which liability is asserted."].) Acts that merely indicate an intent to continue engaging in liability-creating activity are not enough either.

Defendants also contend that a nuisance claim arises out of allegations in paragraphs 26 and 31 concerning Sherry's response to a temporary restraining order obtained by Mei in September 2020. In particular, Defendants point to allegations that Sherry moved out of the Clara Drive property in September 2020 to avoid service of the temporary restraining order, but later submitted a declaration in opposition to the order stating that she resided at the Clara Drive property to show that she could not be

excluded from it. While defendants point out that the complaint describes the declaration as "a complete farce designed to allow her to continually harass Plaintiffs," they fail to explain how the declaration itself might have constituted a nuisance or otherwise supplied an element of a nuisance claim. Like the attorney's response, it is at most a step leading to activity disturbing plaintiff's comfortable enjoyment and thus not the basis of the nuisance claim under the anti-SLAPP statute.

### E. *Unauthorized Computer Access*

Finally, defendants have failed to show that any claim for unauthorized computer access arises from protected activity. Plaintiffs point to allegations in paragraph 34 that Sherry falsified messages on Mei's phone and that Sherry sent fake text messages to herself in violation of the Comprehensive Data Access and Fraud Act, Penal Code section 502. Defendants contend that these actions are protected because Sherry allegedly engaged in them "to gain an advantage in the numerous pending actions." The anti-SLAPP statute, however, does not define acts in furtherance of the right to petition and speech so broadly as to encompass any action taken to gain an advantage in litigation. As noted above, it requires statements made in connection with issues under consideration by official proceedings and issues of public interest or expressive conduct communicating views concerning matters of public significance. (§ 425.16, subd. (e).) Moreover, the anti-SLAPP statute does not protect illegal actions such as those violating the Comprehensive Data Access and Fraud Act. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320.)

### III. DISPOSITION

The order denying defendants' section 425.16 motion is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

19

_____

                        Bromberg, J.

WE CONCUR:

_____

Greenwood, P.J.

_____

Danner, J.

H048994 – Chuang et al. v. Chuang et al.