Filed 11/3/23  Fitzgibbons v. Chaudhuri CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| MICHAEL W. FITZGIBBONS, | |
| Plaintiff and Appellant, | E077070 |
| v. | (Super.Ct.No. RIC2002386) |
| KALI P. CHAUDHURI et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Sunshine S. Sykes, Judge.

Affirmed in part; reversed in part.

Catanzarite Law Corporation, Kenneth J. Catanzarite and Brandon E. Woodward

for Plaintiff and Appellant Michael W. Fitzgibbons.

Holland & Knight, David A. Robinson, Benjamin P. Pugh, Elissa M. McClure,

Nicholas A. Dellefave; Shulman Bastian Friedman & Bui, and Shane M. Biornstad for

Defendants and Appellants Kali P. Chaudhuri et al.

1

Michael W. Fitzgibbons is a former shareholder of KPC Healthcare, Inc. (the Corporation).[1]  Fitzgibbons brought this action against the Corporation, Kali P. Chaudhuri, and related defendants for their alleged wrongdoing in connection with a reverse stock split.  According to the complaint, Chaudhuri was a controlling shareholder of the Corporation, chairman of its board of directors, and an officer of the Corporation. (We refer to the Corporation and Chaudhuri collectively as the KPC defendants.)

The KPC defendants filed a special motion to strike the entire complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[2]  (Unlabeled statutory citations refer to the Code of Civil Procedure.)  They argued that Fitzgibbons's complaint arose from protected activity, namely, the settlement of litigation involving the Corporation.  The trial court granted the motion in part and denied it in part.  The court declined to strike the entire complaint but struck specific paragraphs and lines of the complaint.  It also granted Fitzgibbons leave to amend the complaint.  The KPC defendants moved for attorney fees incurred in litigating the anti-SLAPP motion.  The court granted that motion and awarded them approximately $26,000 in fees.

On appeal, Fitzgibbons argues that the court erred by granting the anti-SLAPP motion and the attorney fees motion.  The KPC defendants move to dismiss this appeal, and they also cross-appeal from the court's order granting the anti-SLAPP motion, arguing that the court erred by granting Fitzgibbons leave to amend.  We deny the motion

---

[1]      The Corporation was formerly known as Integrated Healthcare Holdings, Inc.

[2]      "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

to dismiss the appeal, and we reject Fitzgibbons's challenges to the anti-SLAPP order and the attorney fees order. But we agree with the KPC defendants that the court erred by granting Fitzgibbons leave to amend. We therefore reverse the part of the anti-SLAPP order granting leave to amend, but we otherwise affirm.

BACKGROUND

I. *Allegations of the Complaint*

In June 2020, Fitzgibbons filed his complaint as a putative class action on behalf of himself and similarly situated former shareholders of the Corporation. the complaint asserted causes of action against the Corporation, Chaudhuri, Anil Shah, and Pacific Coast Holdings Investment, LLC (Pacific Coast). Shah and Pacific Coast are not parties to this appeal.

The complaint alleged as follows: Shah and Chaudhuri were controlling shareholders of the Corporation. In 2005, Chaudhuri, Shah, and their affiliates acquired four hospitals through the Corporation and Pacific Coast. The assets of the hospitals were divided—the Corporation owned the operating company assets, and Pacific Coast owned the real estate assets. Around the time of the acquisition, Shah and a group of physicians formed Orange County Physicians Investment Network, LLC (OC Physicians). Shah controlled OC Physicians. OC Physicians bought millions of dollars worth of shares in the Corporation and 51 percent of Pacific Coast.

By mid-2013, Chaudhuri owned 50.3 percent of the outstanding shares of the Corporation, and Shah owned 36.7 percent of the outstanding shares. Each of them also indirectly owned large portions of Pacific Coast. As a result of their voting power,

3

Chaudhuri and Shah controlled the elections for the Corporation's board and controlled the board's decision making. They also controlled the management of Pacific Coast.

In May 2013, the Corporation (through Chaudhuri) offered to purchase OC Physicians' shares in the Corporation. Chaudhuri offered 20.3256 cents per share, "plus additional consideration of $3,452,607.30." Between late May and December 2013, Chaudhuri and Shah continued to negotiate the purchase of OC Physicians' shares. The negotiations concluded with a "document signing" on December 31, 2013. Both OC Physicians and Shah agreed to sell their shares back to the Corporation.

Those negotiations between Chaudhuri and Shah "included a secret agreement" to falsely characterize the Corporation and Pacific Coast "as on the verge of a Chapter 11 bankruptcy." Under the terms of that secret agreement, Shah told the members of OC Physicians and others that Shah was selling his shares for 20.3256 cents each (or about $4 million total), but Chaudhuri gave Shah "a secret separate payment" of $5,775,000. Also, Chaudhuri and Shah used the "bankruptcy ruse" to purchase 20 percent or more of Pacific Coast from exiting OC Physicians members at a bargain price. Shah received an interest in Pacific Coast worth at least $10 million as part of the secret agreement. In total, Shah received compensation of about $1 per share under the secret agreement, rather than the publicly disclosed 20.3256 cents per share.

The Corporation's purchase of Shah's and OC Physicians' shares closed in March 2014. In May 2014, the Corporation's board approved a reverse stock split in which every 13.5 million shares were converted into a single share. Chaudhuri conceived of the reverse stock split and insisted that the board approve it. The Corporation did not issue

fractional shares in connection with the reverse stock split, but the shareholders who were entitled to a fractional share received 20.3256 cents for every presplit share that they owned. Fitzgibbons owned about 1.4 million shares of the Corporation before the reverse stock split, so he received 20.3256 for each of those shares.

Because Chaudhuri concealed the true purchase price of Shah's and OC Physicians' shares, Fitzgibbons and the putative class members did not receive fair value for their shares. And by agreeing to a "common plan and scheme to secretly compensate [Shah] for his shares," each of the defendants breached their fiduciary duties to the shareholders or aided and abetted such breaches. The shares were worth at least $1 each, not the "falsely represented price" of 20.3256 cents. Further, the reverse stock split lacked a valid business purpose and was designed to force Fitzgibbons and the putative class members out of the Corporation before "materially improved performance results began to show."

On the basis of the foregoing allegations, the complaint alleged causes of action against the Corporation, Pacific Coast, Chaudhuri, and Shah for (1) breach of fiduciary duty, (2) conspiracy to breach fiduciary duty, (3) constructive fraud, (4) conversion, and (5) unjust enrichment.

## II. *The Anti-SLAPP Motion*

The KPC defendants moved to strike the entire complaint under the anti-SLAPP statute. They argued that the alleged secret payments to Shah and OC Physicians were not compensation for shares of stock. Rather, the payments were part of settlement agreements and releases of claims.

5

The KPC defendants offered evidence that Shah and OC Physicians had each entered into a "'peace' agreement" with the Corporation, effective December 31, 2013, and a global release, effective March 28, 2014. (Capitalization and boldface omitted.) The agreements and release were attached to the declaration of the Corporation's general counsel, who stated that he had personal knowledge of the agreements and release.

The peace agreements stated that Shah and OC Physicians were involved in disputes or pending litigation concerning the Corporation, and the parties desired to settle and resolve those disputes and litigation. Shah's peace agreement stated that he would receive a "one-time payment of $4,425,000, minus $100,000 already paid" to him, plus a three-year promissory note for $1,250,000. OC Physicians' peace agreement provided that the entity would receive a one-time payment of $3,452,607.30. The peace agreements further stated that (1) the payments to Shah and OC Physicians were equal to the fair market value of the release of their claims against the Corporation, and (2) the payments were "separate and apart from" the fair market value of their shares in the Corporation. The agreements also noted that Shah and OC Physicians were entering into separate stock purchase agreements to sell their shares in the Corporation.

The parties to the global release included the Corporation, Chaudhuri, Shah, OC Physicians, Pacific Coast, and numerous other individuals and entities. According to the global release, the parties released and discharged all of the claims that they had against one another, whether asserted in pending litigation or not. In addition, the peace agreements and the global release identified four specific actions that the parties were

6

settling and dismissing. The KPC defendants filed a request for judicial notice of the operative complaints, cross-complaints, and orders of dismissal in those actions.[3]

The KPC defendants argued that the alleged secret agreement and secret payments at the heart of Fitzgibbons's causes of action constituted protected settlement activity. They contended that the court had to look beyond his attempt at artful pleading to their evidence, which showed that the claimed secret payments to Shah and OC Physicians corresponded to the consideration those parties received under the peace agreements. In addition, the KPC defendants argued that Fitzgibbons could not show a probability of prevailing on his claims, because the litigation privilege (Civ. Code, § 47, subd. (b)) immunized them from liability for the settlement activity. They further argued that Fitzgibbons could not offer evidence that the settlement payments were shams or that 20.3256 cents per share was an unfair price, so he had no evidence that he was injured.

In opposition to the anti-SLAPP motion, Fitzgibbons filed numerous evidentiary objections to the general counsel's declaration and the KPC defendants' request for judicial notice. In Fitzgibbons's opposition brief, he argued that the KPC defendants had not shown that his complaint arose from protected activity. More specifically, he argued that the KPC defendants' alleged misconduct was not the execution of any settlement agreement. Instead, it was (1) their alleged secret agreement with Shah to falsely

---

[3]    The four pending actions were: (1) *Dang v. Shah et al.*, Orange County Superior Court case no. 30-2012-00603644 CU-BC-CJC; (2) *Sweidan et al. v. Orange County Physicians Investment Network, LLC et al.*, Orange County Superior Court case no. 30-2009-00122142; (3) *Chung v. Shah et al.*, Orange County Superior Court case no. 30-2011-00505636; and (4) *Shah v. Chaudhuri et al.*, Riverside County Superior Court case no. RIC1204618.

characterize the financial condition of the Corporation and Pacific Coast and (2) their alleged misrepresentation that 20.3256 cents was a fair price for the shares. He further argued that the alleged secret payment to Shah merely provided "evidentiary support and context" for the true fair value of the Corporation's shares, but he was not seeking to impose liability on the basis of any settlement.

Fitzgibbons also argued that he had a probability of prevailing on his claims. He contended that the litigation privilege did not immunize the KPC defendants from liability, because their alleged secret agreement with Shah was not part of any settlement.

Fitzgibbons further argued that Chaudhuri had a fiduciary duty as a controlling shareholder to disclose all material facts to minority shareholders, and Chaudhuri breached that duty by entering into the secret agreement with Shah.

According to Fitzgibbons's declaration in opposition to the anti-SLAPP motion, in May 2014, Shah told him that Shah and OC Physicians were selling their shares in the Corporation for 20.3 cents each. When Fitzgibbons asked why, Shah said that the Corporation and Pacific Coast were on the brink on bankruptcy. Shah explained that he had looked carefully at the Corporation's financial statements, he was aware of the Corporation's position in the market, and he believed that 20.3 cents was a fair price. In April 2019, Fitzgibbons obtained a copy of "certain settlement agreements and other documents" that had been produced in discovery in another case. After reviewing those documents, Fitzgibbons came to believe that Shah and Chaudhuri had a secret agreement to pay Shah far more than 20.3 cents per share. In addition, after filing the complaint, Fitzgibbons learned that Chaudhuri had sold all of the stock in the Corporation's parent

8

company to the Corporation's employee stock ownership plan for over $227 million. That sale involved additional hospitals not owned by the Corporation, but Fitzgibbons nevertheless believed that the sale price supported his allegation that his shares in the Corporation were undervalued. Fitzgibbons estimated that his shares were worth more than 20.3 cents each and as much as $1 each in May 2014. He intended to hire a forensic expert to determine the fair value of the shares that the Corporation forcibly redeemed through the reverse stock split.

The trial court heard the anti-SLAPP motion in November 2020 and took the matter under submission. The court issued a minute order in December 2020 granting the motion in part and denying it in part (the December order). The court declined to strike the entire complaint but struck portions of the complaint pursuant to *Baral v. Schnitt* (2016) 1 Cal.5th 376 (*Baral*). (*Id.* at p. 393 ["an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded"].) Specifically, the court struck "the portion of the Complaint describing the terms of the 'secret agreement' which reflects the payment of $5,775,000 provided under the settlement agreement between Shah and [the Corporation] in the separately filed actions."[4] The court did not

---

**4** The KPC defendants' moving papers stated that the one-time settlement payment of $4,425,000 (minus $100,000 already paid) to Shah and the promissory note for $1,250,000 amounted to $5,775,000 in total consideration—the precise amount of the alleged secret payment to Shah. But those dollar figures total $5,675,000 ($4,425,000 + $1,250,000). In his opposition papers, Fitzgibbons did not point out that discrepancy, nor did he argue that the discrepancy meant the KPC defendants failed to carry their burden as moving parties. Instead, at the motion hearing, Fitzgibbons indicated that he understood the basis for the trial court's tentative ruling granting the motion in part, and he acknowledged that "the Shah allegations included a settlement agreement that paid

rule on Fitzgibbons's evidentiary objections.  The minute order stated that the objections to the request for judicial notice were not material to any determination the court made and that objections properly presented and not ruled on were preserved for appeal.  The minute order did not mention Fitzgibbons's objections to the general counsel's declaration.

III. *The Motion for Attorney Fees and the Case Management Conference*

In February 2021, the KPC defendants moved for $102,934.50 in attorney fees under the anti-SLAPP statute.  They argued that they achieved a significant practical benefit from bringing the anti-SLAPP motion, and they thus were entitled to attorney fees as a "prevailing defendant."  (§ 425.16, subd. (c)(1).)

In opposition to the motion, Fitzgibbons argued that the KPC defendants achieved no practical benefit from bringing the anti-SLAPP motion, because the December order had not impaired his claims in any way.  He asserted that the order struck certain evidentiary facts, but his complaint alleged no causes of action arising out of or based on any settlement agreement.

The court heard the attorney fees motion in April 2021.  It granted the motion but awarded the KPC defendants only $26,756 of the requested fees.  The court reasoned that the December order significantly impacted the case.  But the anti-SLAPP motion was only partially successful, and the amount of fees requested was not reasonable.  The court

---

him more, and the more was the 5,775,000."  Fitzgibbons does not raise the discrepancy on appeal either.

10

thus decided to award significantly less than what the KPC defendants had sought. Fitzgibbons filed a notice of appeal from the attorney fees order.

After ruling on the attorney fees motion, the court held a case management conference. The court noted that there had been some confusion about which specific portions of the complaint had been stricken as a result of the December order. It explained that it intended to issue a minute order "clarifying to the parties what needs to be stricken." The court explained that when it had ruled on the motion in December, it had decided which portions of the complaint should be stricken but neglected to include that information in the order. ("[A]t the time I did do that . . . making a decision as to what portions would be stricken. I just never provided that to counsel . . . . I just left it out of the order itself.") Fitzgibbons's counsel stated that the opposition to the anti-SLAPP motion specified which portions of the complaint counsel believed were "covered" by the motion, and counsel offered to read the page and line numbers into the record. But the court said that was not necessary. The court explained that in preparing the amended minute order, the court would rely on both its notes from December and the parties' briefs. ("I will relook at that again and consider that when I prepare the minute order.")

IV. *The Minute Order Striking Specific Portions of the Complaint*

In May 2021, the court issued the minute order identifying the specific portions of the complaint that were stricken (the May order). The minute order stated: "Pursuant to the Court's granting of the Motion to Strike on 12/21/20 the following portions of the Complaint are stricken." It then identified numerous whole paragraphs of the complaint

11

and portions of paragraphs.[5]  The court also gave Fitzgibbons leave to amend the complaint "in compliance with this order."  Two days after the court issued the May order, Fitzgibbons filed a notice of appeal from that order.  The KPC defendants filed a notice of cross-appeal from the May order.

DISCUSSION

I. *Motion to Dismiss the Appeal*

The KPC defendants move to dismiss this appeal.  They argue that Fitzgibbons did not appeal the December order granting the motion to strike in part, and the May order was not a separately appealable order.  The argument lacks merit.

An order granting or denying an anti-SLAPP motion is appealable.  (§ 904.1, subd. (a)(13).)  If the trial court substantially modifies an appealable order, then that modification restarts the time to appeal.  (*Rosen v. LegacyQuest* (2014) 225 Cal.App.4th 375, 380; *Lister v. Bowen* (2013) 215 Cal.App.4th 319, 330.)  A modification that materially affects the rights of the parties is substantial.  (*Sanchez v. Strickland* (2011) 200 Cal.App.4th 758, 767.)

The May order constituted a substantial modification of the appealable December order.  The anti-SLAPP motion sought to strike the entire complaint.  The court declined to do that, and the December order stated that the court was treating the motion like a conventional motion to strike under *Baral*, *supra*, 1 Cal.5th 376.  But the December order

---

**5**      The court struck paragraphs 32, 33, 35, 37, 38, 41, 48, 86, 91, 93, 95, and 96 in their entirety.  It struck portions of paragraphs 46, 78, 79(c), 85, 97, 105, and 113.  The order indicated both that paragraph 87 was stricken in its entirety and that portions of paragraph 87 were stricken.

did not identify which specific portions of the complaint were stricken by cause of action, paragraph number, or line number. The order attempted to describe the stricken portions in substance, but the court later recognized that its approach had caused some confusion. The May order resolved that confusion by identifying the numerous paragraphs and lines that were stricken. The modification thus clarified for the first time that a significant portion of Fitzgibbons's complaint was stricken. Under those circumstances, the May order substantially modified the December order and restarted the time to appeal. We therefore deny the motion to dismiss the appeal.

II. *Anti-SLAPP Motion*

Fitzgibbons raises a number of challenges to the court's anti-SLAPP ruling. We conclude that all of his arguments lack merit.

A. *Legal Principles*

"The anti-SLAPP statute enables courts, early in litigation, to strike meritless claims in lawsuits when those claims risk chilling 'continued participation in matters of public significance.' (§ 425.16, subd. (a); see *id.*, subds. (b)(1), (f).) 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (*Id.*, subd. (b)(1).) Thus, when a defendant seeks to strike a plaintiff's claim under the anti-SLAPP statute there are two inquiries: First, does the claim call for the anti-SLAPP statute's protections? Second, if so, does it have

13

sufficient merit?" (*Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 871.) The defendant bears the burden of establishing that a challenged claim arises from activity protected by the anti-SLAPP statute. (*Id.* at p. 872.) If the defendant makes that showing, then the burden shifts to the plaintiff to establish that the challenged claim has sufficient merit. (*Ibid.*)

When determining whether claims arise from protected activity, "courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) But "[a]ssertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, *supra*, 1 Cal.5th at p. 394.) The court thus must consider whether the challenged allegations supply the elements of a claim or merely provide context. (*Bonni*, *supra*, at pp. 1012, 1015-1016.)

If the plaintiff pleads causes of action alleging both protected and unprotected activity, then the court may "strike any part of a cause of action that rests in part on protected activity." (*Bonni*, *supra*, 11 Cal.5th at p. 1011.) The court "should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Id.* at p. 1010.)

14

"The anti-SLAPP statute identifies four categories of protected activity. (§ 425.16, subd. (e)(1)-(4).)" (*Bonni*, *supra*, 11 Cal.5th at p. 1009.) The KPC defendants' motion relied on subdivision (e)(2) of section 425.16, which protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." "A settlement agreement executed in the context of active litigation is 'made in connection with an issue under consideration or review by a . . . judicial body.'" (*O&C Creditors Group, LLC v. Stephens & Stephens XII, L LC* (2019) 42 Cal.App.5th 546, 566 (*O&C Creditors Group*).) Likewise, "the anti-SLAPP statute protects prelawsuit settlement negotiations." (*Bonni*, at p. 1025.) The negotiation and execution of the settlement agreement and the disbursement of settlement proceeds are protected activities under the anti-SLAPP statute. (*O&C Creditors Group*, *supra*, at p. 569 ["cross-defendants' conduct in disbursing the settlement proceeds—i.e., carrying out the terms of the settlement agreement—cannot be neatly cleaved from the indisputably protected activity of negotiating and agreeing to the settlement itself"].)

We independently review an order granting or denying a motion to strike under section 425.16. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) "We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.'" (*Ibid.*, quoting § 425.16, subd. (b)(2).) We do not assess credibility or the weight of the evidence. (*Ibid.*) Instead, we "'accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence

15

only to determine if it has defeated that submitted by the plaintiff as a matter of law.'" (*Ibid.*)

B. *Step One: Arising from Protected Activity*

Fitzgibbons contends that the May order struck portions of the complaint that "clearly included unprotected activity." He quotes 13 stricken paragraphs or partial paragraphs, most of them in one extended sequence, and liberally uses brackets and ellipses to edit the paragraphs. He then asserts that "it is apparent these allegations include unprotected activity, which should not have been struck." But he does not explain how the court erred with respect to each edited paragraph. By striking allegations from the complaint, the court implicitly concluded that they constituted protected activity. (*Baral*, *supra*, 1 Cal.5th at pp. 394, 396; *Bonni*, *supra*, 11 Cal.5th at p. 1010.) Fitzgibbons's conclusory assertion to the contrary does not demonstrate that the trial court erred (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435), and we have no duty to develop his arguments for him (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*)). He has not carried his burden of showing error on appeal. (*Frank & Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 474 (*Frank & Freedus*).)

Fitzgibbons also contends that the allegations concerning the settlement with Shah were merely backdrop, incidental facts, and context supporting the claim that Fitzgibbons did not receive fair value for his shares. He asserts that he is not seeking to impose liability or obtain relief on the basis of the settlement.

16

We are not persuaded that the allegations concerning the settlement with Shah were mere context. For instance, in the introductory section of the complaint, Fitzgibbons alleges that all of the defendants "breached their fiduciary duties of loyalty, due care, independence, candor, [and] good faith and fair dealing" (or aided and abetted such breaches) "by agreeing to the common plan and scheme to secretly compensate" Shah for his shares in the Corporation. Under the heading for the breach of fiduciary duty cause of action, Fitzgibbons alleges that Chaudhuri and Shah breached their fiduciary duties "by entering into the OCPIN Purchase and SHAH Purchase as a means of implementing" the reverse stock split. The complaint defines the "OCPIN Purchase" as the payment of 20.3256 cents per share to OC Physicians, "plus additional consideration of $3,452,607.30." The complaint defines the "SHAH Purchase" as including 20.3256 cents per share, plus the "secret separate payment" to Shah of $5,775,000. The alleged additional consideration and secret payment thus corresponded to the settlement payments Shah and OC Physicians received for releasing their claims against the Corporation.

Given that the complaint alleges that the KPC defendants breached their fiduciary duties to shareholders by making those payments, the allegations are not mere context. Rather, the alleged payments supply a necessary element of the claim—the breach element—so the breach of fiduciary duty claim arises from those acts. (*Bonni*, *supra*, 11 Cal.5th at p. 1016 [retaliation claim arose from alleged actions because the actions supplied a necessary element of the claim]; see *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 [elements of breach of fiduciary duty include the existence of

17

a fiduciary duty, breach of that duty, and damages].) Fitzgibbons's attempt to reframe the allegations as mere context is unavailing. "[F]or present purposes, we will assume his complaint means what it says." (*Bonni*, at p. 1017.)

Fitzgibbons further argues that the gravamen of his complaint is that Chaudhuri breached his fiduciary duties by doing other things, like falsely characterizing the Corporation's and Pacific Coast's financial condition or misleading the minority shareholders about the fair value of their shares, all to force the reverse stock split. But our Supreme Court has rejected the "gravamen approach" urged by Fitzgibbons. (*Bonni*, *supra*, 11 Cal.5th at p. 1011.) When a cause of action seeks relief on the basis of multiple acts, some protected and some not, the court does not "consider whether the gravamen of the entire cause of action [is] based on protected or unprotected activity." (*Ibid*.) Instead, as already explained, "each act or set of acts must be analyzed separately under the usual two-step anti-SLAPP framework." (*Id.* at p. 1012.)

Fitzgibbons additionally argues that the May order struck more allegations than the KPC defendants specifically identified in their motion, and the order did not explain how the stricken allegations constituted protected activity. Neither point demonstrates prejudicial error. The moving papers asked the court to strike the entire complaint, but the court was not limited to granting or denying the motion in its entirety. Rather, the court could strike some portions of the complaint but not others, regardless of what the moving papers argued. (See *Baral*, *supra*, 1 Cal.5th at p. 393 ["courts may rule on plaintiffs' specific claims of protected activity, rather than reward artful pleading by ignoring such claims if they are mixed with assertions of unprotected activity"].)

Moreover, Fitzgibbons cites no authority for the proposition that the court was required to provide a detailed statement of reasons for its ruling. The plain language of section 425.16 does not impose any such requirement, and the "requirement of a written statement of decision generally does not apply to an order on a motion." (*Lien v. Lucky United Properties Investment, Inc.* (2008) 163 Cal.App.4th 620, 623 [rejecting the claim that section 632 required the court to issue a statement of decision on an anti-SLAPP motion].)

C. *Step Two: Probability of Prevailing*

Fitzgibbons argues that he carried his burden of showing a probability of prevailing. He sets forth the elements of his five causes of action and generally argues that he has a probability of prevailing on each cause of action, citing various acts like the alleged misrepresentation of the Corporation's financial condition or the alleged misrepresentation that 20.3256 cents per share was a fair price. But the court did not strike any cause of action in its entirety. The question is whether Fitzgibbons showed a probability of prevailing with respect to the specific claims in the stricken paragraphs or stricken lines. (See *Bonni*, *supra*, 11 Cal.5th at pp. 1026-1027 ["some but not all of the claims collected together as unlawful acts of retaliation" in one cause of action were protected activity, so the plaintiff bore the second-step burden only "for those discrete claims arising from protected activity"].) Fitzgibbons does not identify the stricken portions and explain how the court erred with respect to the claims represented in each portion. He therefore has not carried his burden of showing error on appeal. (*Frank & Freedus*, *supra*, 45 Cal.App.4th at p. 474.)

19

D. *Evidentiary Objections*

Fitzgibbons contends that the trial court abused its discretion by failing to rule on his evidentiary objections to the declaration of the Corporation's general counsel. He also contends that the court abused its discretion regarding his objections to the KPC defendants' request for judicial notice, because the objections required "sharper review." The court's failure to rule on objections preserved them for appeal (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534), but as the appellant, Fitzgibbons still has the burden of showing that the court should have sustained the objections (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114). The objections to the request for judicial notice and the declaration were numerous. Fitzgibbons does not explain the objections, why the court should have sustained any of them, or how there is a reasonable probability of a more favorable result absent the claimed errors. On that last point, he merely asserts that if the court had sustained the objections, then the KPC defendants would have lacked support for their arguments. The bare assertion and overall lack of reasoned argument forfeits the issue. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

E. *Due Process Claim*

Fitzgibbons argues that the trial court sua sponte reconsidered the December order without informing him of its intent and without giving him an opportunity to be heard, thereby denying him due process of law. He contends that the claimed denial of due process renders the May order void. We are not persuaded.

First, the court clearly informed the parties that it intended to issue a minute order specifying the stricken portions of the complaint. That occurred at the case management

20

conference more than one month before the court issued the May order. Fitzgibbons was represented by counsel at the case management conference, and counsel never objected to the court's stated intention or argued that the court should allow further briefing or set a new hearing on the matter. Fitzgibbons has therefore forfeited the argument that the court denied him due process by failing to give him an opportunity to be heard. (*D.Z. v. L.B.* (2022) 79 Cal.App.5th 625, 632-633.)

Second, the court explained that in issuing a clarifying minute order, it intended only to make explicit the determinations it had already made (in its notes, but not in the minute order) when it ruled on the motion in December. But the court also explained that in preparing the new order, the court would again consider Fitzgibbons's briefing on the issue. Fitzgibbons's argument that the May order constituted a sua sponte reconsideration as to which he was denied notice and an opportunity to be heard therefore fails. Because the May order merely made explicit the determinations that the court had already (implicitly) made in December, it was not a reconsideration. And to the extent the court indicated that it might depart from its prior determinations, it also indicated that it would do so *only because of Fitzgibbons's own briefing*. There was consequently no reconsideration as to which Fitzgibbons was denied an opportunity to be heard.

F. *Leave to Amend*

Fitzgibbons argues that by giving him leave to amend the complaint, the May order was functionally equivalent to a denial of the anti-SLAPP motion. According to him, that de facto denial means that we should reverse the order granting the anti-SLAPP motion. We disagree.

21

"[T]he anti-SLAPP statute makes no provision for amending the complaint once the court finds the requisite connection" to protected activity. (*Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073 (*Simmons*).) If the defendant carries their burden on the first step of the analysis, then permitting the plaintiff to amend the complaint "would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend." (*Ibid.*) Such a result "would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing" meritless claims arising from protected activity. (*Id* at p. 1074.)

In *Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858 (*Nguyen-Lam*), the court distinguished case law holding that anti-SLAPP motions may not be granted with leave to amend. (*Id.* at pp. 870-871.) The defendant in *Nguyen-Lam* showed that the plaintiff's slander claim arose from protected activity. (*Id.* at pp. 865-866.) The trial court concluded that the complaint was deficient because it failed to allege that the defendant acted with actual malice. (*Id.* at pp. 865-866.) However, the evidence submitted with the plaintiff's opposition brief showed actual malice. (*Id.* at pp. 865-866, 868-869.) "The trial court couched its ruling as an order granting [the] defendant's motion to strike, but

22

with leave for [the] plaintiff to amend her complaint to cure any deficiency concerning actual malice." (*Id*. at p. 869.)

Under those circumstances, the *Nguyen-Lam* court characterized the trial court's order as "effectively denying [the] defendant's motion to strike" (*Nguyen-Lam*, *supra*, 171 Cal.App.4th at p. 874), because the trial court had concluded that the plaintiff's evidence showed a probability of prevailing on her slander claim. (*Id.* at pp. 866, 871.) Moreover, the court held that the trial court properly granted leave to amend to conform to the plaintiff's proof of actual malice. (*Id.* at p. 873.) An amendment under those circumstances did not implicate the "'procedural quagmire'" with which prior case law was concerned. (*Id*. at p. 872, quoting *Simmons*, *supra*, 92 Cal.App.4th at p. 1073.) That is, when "the evidence prompting amendment is found in the declarations already submitted for the hearing, there is no risk the purpose of the strike procedure will be thwarted with delay, distraction, or increased costs." (*Nguyen-Lam*, at p. 872.) There was no need for a "'fresh motion to strike,'" given that the trial court was ruling "on the motion and facts already under consideration." (*Ibid.*) The *Nguyen-Lam* court therefore affirmed the "order granting [the] plaintiff leave to amend and thereby effectively denying [the] defendant's motion to strike." (*Id.* at p. 874.)

*Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611 (*Martin*) affirmed an anti-SLAPP order granting leave to amend for similar reasons. (*Id*. at p. 629.) *Martin* recognized that section 425.16 does not authorize granting leave to amend and that, generally, courts should grant or deny an anti-SLAPP motion without leave to amend. (*Martin*, *supra*, at pp. 625-626, 629.) Nevertheless, the court affirmed

23

the trial court's order granting the anti-SLAPP motion with leave to amend. (*Id.* at pp. 626, 629.) *Martin* held that the order was functionally equivalent to denying the motion, and the denial was correct, because the defendants had failed to show that the challenged claim arose from protected activity. (*Id.* at pp. 628-629.)

Fitzgibbons relies solely on *Martin* and argues that by granting leave to amend, the May order "must be viewed as denying" the anti-SLAPP motion. But *Martin* is distinguishable, as is *Nguyen-Lam*, *supra*, 171 Cal.App.4th 858. The courts in *Martin* and *Nguyen-Lam* characterized the orders as functional denials and affirmed those orders because the orders correctly rejected the anti-SLAPP motions on the merits, either because the claim did not arise from protected activity or because the plaintiff had shown a probability of prevailing. Unlike the plaintiffs in those cases, Fitzgibbons has not shown that the anti-SLAPP motion should have been denied—he has not shown that the KPC defendants failed to carry their first-step burden (*Martin*) or that he had a probability of prevailing at the second step (*Nguyen-Lam*).

For these reasons, we reject Fitzgibbons's argument that the order partially granting the anti-SLAPP motion should be reversed because it was functionally a denial.

G. *KPC Defendants' Cross-Appeal*

In their cross-appeal, the KPC defendants argue that the court erred by granting Fitzgibbons leave to amend the complaint in the May order. We agree that the court erred by granting leave to amend.

As already explained, "the anti-SLAPP statute makes no provision for amending the complaint once the court finds the requisite connection" to protected activity.

24

(*Simmons*, *supra*, 92 Cal.App.4th at p. 1073.) When the court granted the motion in part, it necessarily found the requisite connection to protected activity. And there is no indication in the record that the court concluded Fitzgibbons had shown a probability of prevailing on the claims arising from protected activity but an amendment was necessary to conform the complaint to proof. This case thus is unlike *Nguyen-Lam*. (*Nguyen-Lam*, *supra*, 171 Cal.App.4th at p. 873.) Granting leave to amend under the circumstances here "would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend." (*Simmons*, at p. 1073.)

The court consequently erred by granting leave to amend in the May order. In the absence of that error, the KPC defendants would have obtained a better result—an unqualified order granting their motion in part. We therefore reverse the part of the May order granting leave to amend.

III. *Attorney Fees Motion*

Fitzgibbons lastly argues that the court erred by concluding that the KPC defendants prevailed on the anti-SLAPP motion and were entitled to attorney fees. The argument lacks merit.

A defendant who prevails on an anti-SLAPP motion "shall be entitled to recover that defendant's attorney's fees and costs." (§ 425.16, subd. (c)(1).) A partially prevailing defendant generally must "be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 340.) The fee award to the partially successful defendant "should be

25

commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way." (*Id.* at p. 345.) Relevant factors include "the extent to which the defendant's litigation posture was advanced by the motion, whether the same factual allegations remain to be litigated, whether discovery and motion practice have been narrowed, and the extent to which future litigation expenses and strategy were impacted by the motion." (*Ibid.*) We review for abuse of discretion the trial court's determination that a partially successful defendant prevailed for purposes of the anti-SLAPP fee provision. (*Id.* at p. 340.)

Fitzgibbons fails to show an abuse of discretion in this case. He argues that the court effectively denied the anti-SLAPP motion by granting leave to amend, so the attorney fees order is "moot." But we have already rejected the argument that the court effectively denied the anti-SLAPP motion. He also asserts that the court did not strike any theory of liability, the striking of the allegations did not reduce the KPC defendants' exposure, and he still may be able to establish that his shares were undervalued. It is true that the court did not strike any cause of action in its entirety and that Fitzgibbons still has a chance to prove that his shares were undervalued in the reverse stock split. But the trial court recognized that its anti-SLAPP ruling represented only a partial victory for the KPC defendants, and that was one of two reasons why the court awarded them only about 26 percent of the requested fees. Fitzgibbons's bare assertions do not persuade us that the court abused its discretion by failing to reduce the fee award to zero.

26

## DISPOSITION

The December order granting the anti-SLAPP motion in part and denying it in part is affirmed. The May order is reversed in part and affirmed in part: The portion of the May order granting Fitzgibbons leave to amend is reversed, but the May order is otherwise affirmed. The order granting the attorney fees motion is affirmed. The KPC defendants shall recover their costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ          

J.

We concur:

RAMIREZ         

         P. J.

RAPHAEL         

         J.